CITY OF LINCOLN V. CATHERINE O'BRIEN.

FILED NOVEMBER 17, 1898.   No. 9756.

1. **Municipal Corporations: DEFECTIVE SIDEWALKS: LIABILITY OF CITY.** A city charged with the duty of maintaining streets, and sidewalks is liable for injuries sustained by travelers, exercising ordinary care, who are injured by the city's negligent failure to perform that duty.

2. ———: ———: ———: DUTY OF PROPERTY OWNERS. The provision in Compiled Statutes, chapter 13*a*, section 67, subdivision 6, whereby it is made the duty of real estate owners and occupants to keep sidewalks in repair, and making them liable for injuries caused by defective sidewalks, does not relieve the city from that duty and consequent responsibility.

3. ———: ———: ———. The various charter provisions of cities of the first class having more than 25,000 inhabitants, with regard to the maintenance of sidewalks, construed as imposing a direct liability upon the municipality for injuries from defective walks.

4. **Claim Against City for Damages: STATEMENT FILED WITH CITY CLERK: DESCRIPTION OF PLACE OF INJURY.** Compiled Statutes, chapter 13*a*, section 36, requiring that to maintain an action against a city for an unliquidated claim the party must file in the office of the city clerk, within three months from the time the right of action accrues, a statement giving, among other things, the place of the injury, requires that the statement must describe the place with such certainty that from the description and inquiries suggested thereby, the place may with reasonable diligence be identified.

5. ———: ———: ———. A notice under that section stated that the plaintiff was passing over the sidewalk on the north side of Q street between Eighteenth and Twentieth streets, and "stepped into a hole in the sidewalk, which was in a bad state of repair." Although a space of two city blocks was described, *held*, that the notice was good, as it stated that the sidewalk was in bad repair, and that plaintiff stepped through a hole therein, there being no proof that such conditions existed at more than one spot in the space described. No presumption of negligence at other places can be indulged to relieve the city from liability.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Affirmed.*

The facts are stated in the opinion.

*Joseph R. Webster* and *John P. Maule,* for plaintiff in error:

The city charter, as amended in 1889, makes the lot owner liable primarily and casts obligation on him to keep the walk in repair, and thereby relieves the city of liability. (*Arkadelphia v. Windham,* 49 Ark. 139; *Winbigler v. City of Los Angeles,* 45 Cal. 36; *Young v. Charleston,* 20 S. Car. 116; *City of Detroit v. Blackeby,* 21 Mich. 84; *Pray v. Jersey City,* 32 N. J. Law 394; *French v. City of Boston,* 129 Mass. 592; *City of Marquette v. Cleary,* 37 Mich. 296; *Morgan v. City of Hallowell,* 57 Me. 375; *Jones v. City of New Haven,* 34 Conn. 13; *Hewison v. City of New Haven,* 37 Conn. 475; *McCutcheon v. Village of Homer,* 43 Mich. 483; *City of Detroit v. Putnam,* 45 Mich. 265.)

No claim complying with the statute, imposed as a condition precedent to a cause of action, was filed with the city clerk and no action will lie. (*City of Lincoln v. Grant,* 38 Neb. 369; *City of Lincoln v. Finkle,* 41 Neb. 575; *City of Denver v. Saulcey,* 38 Pac. Rep. [Colo.] 1098.)

Giving notice in the form and manner prescribed is a condition precedent without which plaintiff may not maintain his action. (*Reining v. City of Buffalo,* 102 N. Y. 308; *Wentworth v. Town of Summit,* 60 Wis. 281; *Gay v. City of Cambridge,* 128 Mass. 387; *Plum v. City of Fond du Lac,* 51 Wis. 353.)

*N. C. Abbott,* also for plaintiff in error.    .

*Mockett & Polk* and *R. D. Stearns, contra:*

A city cannot abandon its duty to keep sidewalks in repair. (*Davis v. City of Omaha,* 47 Neb. 842; *City of Lincoln v. Smith,* 28 Neb. 762; *City of Chadron v. Glover,* 43 Neb. 732; *City of Lincoln v. Calvert,* 39 Neb. 305; *City of Aurora v. Cox,* 43 Neb. 727.)

The duty of a city to keep its streets in repair extends to sidewalks, and it is liable for negligence in failing to perform that duty. (*Burns v. City of Toronto,* 42 U. C. Q. B. 560; *Hutton v. Town of Windsor,* 34 U. C. Q. B. 487; *Ray v. Village of Petrolia,* 24 U. C. C. P. 420; *Bacon v. City of Boston,* 3 Cush. [Mass.] 174; *City of Lowell v. Spaulding,* 4 Cush. [Mass.] 277; *Drake v. City of Lowell,* 13 Met. [Mass.] 292; *Hart v. City of Brooklyn,* 36 Barb. [N. Y.] 226; *Kirby v. Boylston Market Ass'n,* 14 Gray [Mass.] 249; *Manchester v. City of Hartford,* 30 Conn. 118; *Hubbard v. City of Concord,* 35 N. H. 54; *Springfield Milling Co. v. Lane County,* 5 Ore. 265; *Mayor v. Furze,* 3 Hill [N. Y.] 612; *City of Chicago v. O'Brien,* 111 Ill. 532; *Studley v. City of Oshkosh,* 45 Wis. 380; *Furnell v. City of St. Paul,* 20 Minn. 117; *Village of Warren v. Wright,* 3 Ill. App. 602; *City of Chicago v. Langlass,* 66 Ill. 361; *City of Chicago v. Crooker,* 2 Ill. App. 279; *City of Atlanta v. Perdue,* 53 Ga. 607; *City of Chicago v. McCarthy,* 75 Ill. 602; *Moore v. City of Minneapolis,* 19 Minn. 300; *Market v. City of St. Louis,* 56 Mo. 189; *Barnes v. Town of Newton,* 46 Ia. 567; *Higert v. City of Greencastle,* 43 Ind. 574; *Boucher v. City of New Haven,* 40 Conn. 456; *Phelps v. Hawley,* 52 N. Y. 23; *Hurford v. City of Omaha,* 4 Neb. 336; *Blake v. Portsmouth & C. R. Co.,* 39 N. H. 435; *Inhabitants of Veazie v. Inhabitants of China,* 50 Me. 518; *Steines v. Franklin County,* 48 Mo. 167; *Wilson v Mayor,* 43 Am. Dec. [N. Y.] 719; *City of Rochester v. Campbell,* 123 N. Y. 405.)

The neglect of an abutting owner to keep the sidewalk in repair, and to keep it free from snow and ice as re-

quired by law, does not render him liable to a party injured, or to the city itself, unless such owner himself caused the defect. (*City of Rochester v. Campbell*, 25 N. E. Rep. [N. Y.] 937; *Russell v. Village of Canastota*, 98 N. Y. 496; *Heeney v. Sprague*, 11 R. I. 456; *Flynn v. Canton Co.*, 40 Md. 312; *Hill v. City of Fond du Lac*, 56 Wis. 242; *Knupfle v. Knickerbocker Ice Co.*, 84 N. Y. 488; *Eustace v. Jahns*, 38 Cal. 3; *Weller v. McCormick*, 47 N. J. Law 397; *City of Keokuk v. District of Keokuk*, 53 Ia. 352; *State v. Gorham*, 37 Me. 457.)

The charter devolves upon the city the custody of and power and control over streets usually devolved upon municipal corporations. This necessarily creates the obligation to keep the same in repair and the liability for injuries caused by neglect of that duty. (*City of St. Paul v. Seitz*, 3 Minn. 205; *Shartle v. Minneapolis*, 17 Minn. 284; *Furnell v. City of St. Paul*, 20 Minn. 117; *City of Chicago v. Robbins*, 2 Black [U. S.] 422; *Inhabitants of Westfield v. Mayo*, 122 Mass. 100; *City of Boston v. Worthington*, 10 Gray [Mass.] 496; *City of Lowell v. Short*, 4 Cush. [Mass.] 275; *Inhabitants of Milford v. Holbrook*, 9 Allen [Mass.] 17; *Inhabitants of West Boylston v. Mason*, 102 Mass. 341; *City of Norwich v. Breed*, 30 Conn. 535; *Inhabitants of Veazie v. Penobscot R. Co.*, 49 Me. 119.)

When the charter of a city gives it the power to cause sidewalks to be kept in repair and makes adequate provision for so doing, the exercise of the power follows as a duty. In such case, the city is liable for actionable defects in sidewalks, although the charter requires the lot owner to build the sidewalks and imposes a penalty for his failure in this regard. The abutting owner is not bound to keep the sidewalk in repair, unless by virtue of the requirement of a statute, and is not responsible to travelers or to the city for defects therein not caused by himself. (*Moore v. Gadsden*, 93 N. Y. 12; *Wenzlick v. McCotter*, 87 N. Y. 127; *State v. Gorham*, 37 Me. 451; *City of Philadelphia v. Smith*, 16 Atl. Rep. [Pa.] 493; *City of Bloomington v. Bay*, 42 Ill. 503; *Browning v. City of Spring-*

*field,* 17 Ill. 143; *City of Joliet v. Verley,* 35 Ill. 58; *Toutloff v. City of Green Bay,* 65 N. W. Rep. [Wis.] 168.)

The duty to construct and maintain sidewalks being in the nature of a tax is one that is owing only to the city, just as the duty to pay taxes for local improvements imposed in any other way. It is not, and from its very nature cannot be, a duty owing third persons. (*Noonan v. City of Stillwater,* 7 Am. & Eng. Corp. Cases [Minn.] 17; *Commissioners v. City of Topeka,* 39 Kan. 197; *Norton v. City of St. Louis,* 97 Mo. 537; *Taylor v. Lake S. & M. S. R. Co.,* 45 Mich. 74.)

The statement filed with the city clerk sufficiently described the premises where the injury occurred. (*Wall v. Town of Highland,* 39 N. W. Rep. [Wis.] 560; *Fopper v. Town of Wheatland,* 18 N. W. Rep. [Wis.] 514; *Delger v. City of St. Paul,* 14 Fed. Rep. 567; *Salladay v. Town of Dodgeville,* 55 N. W. Rep. [Wis.] 696; *Laird v. Town of Otsego,* 62 N. W. Rep. [Wis.] 1042; *Fassett v. Town of Roxbury,* 55 Vt. 552; *Fortin v. Inhabitants of Easthampton,* 8 N. E. Rep. [Mass.] 328.)

IRVINE, C.

This action was by Catherine O'Brien against the city of Lincoln to recover for personal injuries by her sustained by reason of a defective sidewalk. She had a verdict and judgment, which the city seeks to avoid. The record distinctly presents two, and only two, questions: First, is a city of the class to which Lincoln belongs liable in any event to one who suffers an injury from a defect in the sidewalk? Secondly, was the notice served upon the city before bringing suit sufficient in its description of the place where the injury occurred?

The general duty of municipal corporations to maintain their streets, including the sidewalk space, in a reasonably safe condition for public travel, and their consequent liability for a negligent failure to perform that duty has been often asserted. Among the more recent cases declaring the rule are: *City of Lincoln v. Smith,* 28

Neb. 762; *City of Lincoln v. Calvert*, 39 Neb. 305; *City of Aurora v. Cox*, 43 Neb. 727; *City of Chadron v. Glover*, 43 Neb. 732. The existence of this general rule is conceded, but it is asserted that it does not apply to the class of cities to which Lincoln belongs, and so far as concerns sidewalks, because the so-called charter, or act incorporating such cities, casts in express terms the duty of maintaining sidewalks upon the owners of abutting real estate, and so, by implication at least, relieves the city from that duty. The question is therefore wholly one of statutory construction, and cases from other states are of little assistance in solving it. Lincoln is, and in 1894, when the injury to plaintiff occurred, was, a city of the first class containing more than 25,000 inhabitants, and governed by chapter 13a, Compiled Statutes. The following provisions of that chapter are pertinent:

"Sec. 34. The mayor and council shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

"Sec. 31. The street commissioner * * * shall, subject to the orders of the mayor, have general charge, direction and control of all work in the streets, sidewalks, * * * except matters in charge of the civil engineer," etc.

Sec. 67, subdiv. 6. "The council shall have power to set aside a space designated as the sidewalk space, on each side of all streets and avenues, for sidewalks and the planting of trees and grass, and may require and regulate the planting and protecting of trees and grass, and the construction of sidewalks in such space. Such space shall extend from lot line to curb. Whenever any street or avenue shall have been brought to the established grade or permanently improved, the council shall require the owners of the real estate adjacent thereto, to bring the sidewalk space along or in front of such real estate to the established grade, and to lay a sidewalk

thereon of such width and materials as the council may determine; and in case any such property owner shall refuse and neglect to cause such grading to be done or sidewalk constructed within thirty days after being notified in the manner prescribed by ordinance, the council may order said grading to be done and said sidewalk constructed, and assess the cost thereof against the real estate in front of which the said work was done. Whenever any street or avenue shall have been brought to the established grade or permanently improved, the council may require the owners of the real estate adjacent thereto to bring the sidewalk space along or in front of such real estate to the established grade, and to lay a sidewalk thereon of such width and suitable material placed in such space in said sidewalk space as the council may determine and shall have so ordered by proper ordinances.  *  *  *  And in case any such property owners shall refuse and neglect to cause such grading to be done or said sidewalk constructed within thirty days after being notified in the manner provided by ordinance, the council shall order said grading to be done and said sidewalks constructed in conformity with the ordinances regulating the same, and shall have power to take up and remove all walks not laid in conformity with such rules and regulations as may be prescribed. And said council shall, at the beginning of each municipal year, receive bids for the erection of all sidewalks hereinafter to be laid or relaid as provided herein, and shall award therefor a contract to the lowest bidder for the year, and said contractor shall be required to lay or relay all sidewalks as ordered by the said council in accordance with the ordinances of said city, and the said contractor shall receive his pay for such work from the assessments against the real estate in front of which the said work was done; and that the cost of all such work, laying and relaying such walks in conformity with such ordinances, shall be assessed against the real estate in front of which the said work was done. And the city

treasurer of said city shall pay over to such contractor upon order of the council all assessments or special taxes against such real estate collected, together with the interest and penalty collected thereon, which shall in each case be full compensation to such contractor for any work so done under his said contract along and in front of any property upon which said assessment or tax shall have been collected. The council may by ordinance provide for the laying of temporary sidewalks upon the natural surface of the ground upon streets not brought to the established grade, and in case of refusal or neglect of [any] property owner in front of or along the side of whose lot such sidewalk may be ordered to construct the same within thirty days after being served with notice in the manner prescribed by ordinance, the council may cause the same to be constructed, and assess the cost thereof on the property in front of which the same shall be laid. In case any property owner shall refuse or neglect to repair the sidewalk adjacent to his property within two (2) days after being notified so to do in the manner prescribed by ordinance, the proper officer may cause said walk to be repaired, and shall report the cost thereof to the council, when the same may be assessed against such property. The cost of grading sidewalk space, and the construction, replacement, or repair of sidewalks as herein provided, shall be assessed at a regular meeting of the council, by a resolution fixing the cost of such grading, construction, or repairs, along the lot adjacent thereto, as a special assessment thereon; and the amount charged against the same, with the vote thereon by yeas and nays, shall be spread at length upon the minutes. Notice of the time of holding such meeting, and the purpose for which it is held, shall be published once in some newspaper published and of general circulation in said city, at least five days before the same shall be held, or, in lieu thereof, personal service may be had upon the persons owning the property to be assessed. All such assessments shall be known as special sidewalk

City of Lincoln v. O'Brien.

assessments, and, with the cost of notice, shall be levied and collected as a separate tax, in addition to the taxes for general revenue purposes, subject to the same penalties, and collected in like manner, as other city taxes, but such special assessments shall draw interest at one per cent per month. The same shall be certified by the city clerk and the city treasurer, who shall place the same on the tax list for the current year against such property. It is hereby made the duty of all real estate owners and occupants to keep the sidewalk alongside or in front of the same in good repair and free from snow and ice, and other obstructions, and they shall be liable for all damages or injuries occasioned by reason of the defective condition of any such sidewalk."

It is upon the language of the last sentence of the last section quoted that the defendant bases its argument, asserting that the duty cast upon the city is purely governmental, to enforce the primary duty of the owner or occupant of abutting real estate, and that consequently no liability rests upon it for a failure to discharge that duty. Without entering upon a detailed analysis of the several provisions we deem it sufficient to say that after a careful examination we are agreed that the purpose of the last provision of subdivision 6 was not to relieve the city from the duty, and consequent responsibility, which would clearly follow, under the uniform decisions of this court, from the sections quoted in the absence of the last provision. Whether the object was to assure a liability over from the owner or occupant to the city, or whether it was to add a liability on the part of the owner or occupant to the person injured, in addition to that attaching to the municipality, is a question not involved in this case. Certainly the object was one or the other, or both. There is no hint of an intention to relieve the city from a liability clearly implied from the preceding provisions. These cast upon the city the duty of maintaining the streets and sidewalks, create an officer to superintend the performance of that

53

duty, and grant to the city ample power to perform the duty by requiring the owner to build or repair, and if he fail so to do, permitting the city itself to do the work and reimburse itself by local assessment. The duty is not solely a political duty, to wield the force of the state to compel the citizen to obey the law, but it is an administrative duty, requiring the city to see that its sidewalks are properly maintained, but authorizing it to accomplish that purpose by directly or indirectly exacting payment of the expense from the property owner. There is nothing in the charter reasonably differentiating it from those under which this court has declared the general rule of the city's liability.

The other question presented is by no means free from doubt, but we think that too must be resolved in favor of the plaintiff. Section 36 of the act already cited provides: "To maintain an action against said city for any unliquidated claim it shall be necessary that the party file in the office of the city clerk, within three months from the time such right of action accrued, a statement giving full name and the time, place, nature, circumstance, and cause of the injury or damage complained of." It has been held that this is a reasonable exercise of legislative power, and that a compliance with the requirement must be alleged and proved in order to a recovery. (*City of Lincoln v. Grant*, 38 Neb. 369; *City of Lincoln v. Finkle*, 41 Neb. 575.) This requires that the place of the injury be stated. In the notice served by plaintiff she states: "That on or about the 6th day of October, 1894, this affiant was passing on and over the sidewalk on the north side of Q between Eighteenth and Twentieth streets, in said city, in the evening of said day, and stepped into a hole in said sidewalk, which was in a bad state of repair." It is to be inferred that it was the sidewalk and not the hole which plaintiff intended to say was in a bad state of repair,—a fact which, it will be seen, is of some importance. It is asserted that this statement is entirely insufficient, in that it designates

a space of two city blocks and does not lead to any more precise location. It is argued that one of the objects of the statute is to permit the city, on receiving notice, to avouch the proper land owner to defend the case, and that the statement must be sufficiently definite to permit the accomplishment of this object. In our own decisions and in those of other states where similar statutes exist it has always been said that the object is to advise the city promptly of the claim so as to afford an opportunity for investigation. It may be that where the property owner is liable over to the city, the other object also exists, and that a better statement of the purpose of the law is that it is to permit the city promptly to take any steps proper for its protection. However, there is no practical difference in the result. Whether the object be one or the other or both, it is clear that the statute requires a reasonably certain description of the place—such a description as, from its terms and from inquiries suggested thereby, will permit the officers of the city to identify the place. On the other hand, no case here or elsewhere has required that such a notice describe the place with technical accuracy. As one court has said, it was never contemplated that one who has been injured must employ a surveyor to fix the precise spot where the injury occurred. In examining the rather numerous cases on the subject certain principles will be found to run through all. One is that it is sufficient, as above stated, if the place be so described that from that description it can be identified with reasonable diligence. Another is that the sufficiency of the notice is not to be determined from its terms alone, but in the light of extraneous evidence of the situation and surroundings.

In *Fopper v. Town of Wheatland*, 18 N. W. Rep. [Wis.] 514, in that part of the notice fixing the place a considerable extent of road was described, but in describing the accident circumstances were stated which showed that it must have occurred at a particular spot along the course indicated, and this was held enough.

In *Wall v. Town of Highland,* 39 N. W. Rep. [Wis.] 560, the notice said the accident occurred on a bridge. It was in fact a culvert, but its place was quite definitely fixed and the notice was held good, although there was a bridge not far away.

In *Owen v. City of Fort Dodge,* 67 N. W. Rep. [Ia.] 281, the notice was somewhat ambiguous, but showed that the accident was about the intersection of two streets. It also showed that it occurred on a plank crossing. The evidence on the trial showing that there was only one plank crossing at the intersection named, the notice was held good, although the corner may have been improperly described.

In *Laird v. Town of Otsego,* 62 N. W. Rep. [Wis.] 1042, the description was uncertain in itself, naming an indefinite portion of a highway; but it afterwards described the obstruction causing the injury, and it was held that as this obstruction was conspicuous its description made the notice good.

In *Lyman v. Hampshire,* 138 Mass. 74, the notice placed the accident on a bridge of considerable length, but said that it was caused by stepping in a hole in the flooring caused by a short plank. There were three such holes, but the notice was held good because it did not appear that more than one was large enough to permit such an accident.

In *Brown v. Town of Southbury,* 53 Conn. 212, the notice described "a defective sluice across a highway" between certain houses. There were three sluices across the highway in the space described, but only one was defective. This was held sufficient.

In *Lowe v. Clinton,* 133 Mass. 526, the place was fixed between two houses which were fifty rods apart and there were intervening houses, but there was also described as the cause of injury a stump projecting four inches above the sidewalk. There was only one such stump, and therefore it was held that the notice was sufficient.

In *Harder v. City of Minneapolis*, 40 Minn. 446, the notice was particular on its face, but it named the adjoining cross street as "Sixteenth street." As a matter of fact it was a street of another name, and the street on which the injury occurred did not extend to Sixteenth street. The plaintiff had inferred that as the last street he had crossed was Fifteenth the next would be Sixteenth. This was held good because the officers must certainly know what was meant.

In *Cross v. City of Elmira*, 86 Hun [N. Y.] 467, the notice said that plaintiff was walking on the plank sidewalk on the north side of East Washington avenue, between Oak and Pratt streets. The distance named was 368 feet and there was plank sidewalk containing other holes than that causing the injury for a distance of 150 feet. This was held sufficient.

In *McCabe v. City of Cambridge*, 134 Mass. 484, the place on the street was not very definitely given, but the obstruction was described, and this was held enough, the court saying that the city certainly would not insist that there were several such defects in the neighborhood.

The cases cited illustrate the principles already stated, and also serve to show with what liberality the courts have construed this somewhat harsh statute. An application of the rules induced from the cases certainly helps out this notice. The evidence showed that plaintiff was injured at a spot on the sidewalk within the space named by the notice and between Eighteenth and Nineteenth streets; that this was in front of the one vacant lot in that block, and in front of that lot there was a plank sidewalk, the planks laid lengthwise and containing several large holes. It is true that it appears that the plaintiff knew the exact location and might have described it better in her notice. On the other hand, it is inferable from the evidence that the ruinous sidewalk was peculiar to that part of the street in front of this one lot. There is no proof that there were any holes elsewhere along the two blocks described, and we cannot presume that

the city was so generally neglectful of its duty that there were other places where the sidewalk was in bad repair and contained holes which one might step into within the two blocks named. From the notice it appeared that the sidewalk where the injury occurred was in bad repair and that the plaintiff stepped through a hole therein. Without indulging the presumption above adverted to, we must conclude that the notice thus furnished sufficient information to enable the city to identify the portion of the walk referred to, although perhaps not the particular hole. The city only claims that the notice should be so specific as to lead to identifying the lot in front of which the accident happened. From all that appears in the evidence it might here have done so.

AFFIRMED.