GEORGE P. BEMIS, APPELLEE, V. CITY OF OMAHA, APPELLANT.

FILED APRIL 10, 1908.    No. 14,961.

1. Cities: INJURIES: EVIDENCE: ADMISSIBILITY. In an action for personal injuries against a city by one who claims to have been injured by reason of the overturning, during a wind-storm, of a billboard which defendant city had permitted to be erected and maintained close to, or upon, the sidewalk space, it is not error to admit testimony tending to show that at the time of the injury the board was not securely braced, and that such condition had existed for some 12 months prior thereto.

2. ———: ———: NOTICE. Section 22, ch. 12a, Comp. St. 1901, does not require an injured person to include within his written notice to the city a statement of the nature and extent of both the accident and injury, but reference to either, with full particulars as to the nature and extent thereof, satisfies the statute on that point.

3. ———: ———: QUESTION FOR JURY. Evidence examined, and held sufficient to warrant the submission to the jury of the issue as to whether or not the wind-storm that overturned the billboard was an act of God.

4. ———: ———: EVIDENCE. Evidence examined, and held sufficient to sustain the verdict of the jury.

5. Jury: QUALIFICATIONS. It is the duty of the trial court to decide as to the fact of qualification of a juror challenged for cause from a consideration of his entire examination and such other evidence and circumstances as tend to throw light upon the subject. The trial court in determining the fact of qualification is not confined to the answers of the juror alone, but may consider

his appearance and general demeanor while undergoing the examination.

6. ———: ———. In such a case the ruling of the trial court in deciding a challenge for cause will not be disturbed unless an abuse of discretion is shown.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*H. E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*W. J. Connell* and *Walter P. Thomas, contra.*

FAWCETT, C.

Plaintiff recovered judgment in the district court for Douglas county for injuries caused · by the overthrow, during a wind-storm, of a billboard, which he claimed defendant had suffered to be placed and maintained close to, or upon, part of the sidewalk space on the north side of Farnam street, between Eighteenth and Nineteenth streets, in the city of Omaha.

Defendant, in its brief, alleges four grounds of error: That the court erred in not sustaining appellant's challenge of the juror Liddell; that the verdict of the jury is not sustained by sufficient evidence; that no sufficient notice was given to the city as required by section 22, ch. 12*a,* Comp. St. 1901; and that the court erred in admitting evidence as to the condition of the billboard at a period long prior to the accident complained of. We will consider these points in reverse order.

1. That court did not err in admitting testimony to the effect that, at various times, reaching back as far as a year and down to within a few days next preceding the accident, a brace provided for the support of the billboard was loose and detached from the anchor post. This testimony was met by testimony offered by defendant that the billboard had been inspected within a month of the acci-

26

dent, and all of the braces found intact and fastened to the anchor post. The weight of this conflicting testimony was exclusively for the jury. Testimony tending to show the inspection and condition of the board would not render inadmissible and incompetent the chain of testimony which, if believed by the jurors, indicated a long-continued, or at least a frequently occurring, dangerous condition of the board. *Maus v. City of Springfield,* 101 Mo. 613, 20 Am. St. 634; *Hanousek v. City of Marshalltown,* 130 Ia. 550.

2. The statute under which the city of Omaha is incorporated provides: "No city shall be liable for damages arising from defective streets, alleys, sidewalks, public parks or other public places within such city, unless actual notice in writing of the accident or injury complained of with a statement of the nature and extent thereof, and of the time when and place where the same occurred, shall be proved to have been given to the mayor or city clerk within twenty (20) days after the occurrence of such accident or injury." Comp. St. 1901, ch. 12a, sec. 22. The notice, shown to have been given within 20 days of the accident, is as follows: "Notice is hereby given that on Friday, the 25th day of April, 1902, about the hour of 6:30 o'clock P. M., I sustained a serious and permanent personal injury as the result of the negligence of the city of Omaha in allowing and permitting to be maintained near the sidewalk on the north side of Farnam street, between Eighteenth and Nineteenth streets, in the city of Omaha, large billboards or wooden signs, and in failing and neglecting to cause the said billboards or signs to be removed or abated as a nuisance; the same being at such time and for a long time prior thereto a nuisance, and in a dangerous condition, and standing in danger and proximity to said sidewalk. You are further notified that at the time and place mentioned, the said place being more particularly described as follows: About 100 feet west of the west line of Eighteenth street, on the north side of Farnam street, in the said city of Omaha, while walking

along the sidewalk provided for pedestrians on said north side of Farnam street, and while immediately opposite one of the said large billboards or signs, the same, without notice or warning, was blown down upon said sidewalk at the place where I was walking, and fell upon me, crushing me to the stone walk, thereby seriously injuring me, breaking both bones of my left leg between the knee and the ankle, and greatly lacerating my leg at the said place, the bones of my leg being splintered and badly broken, by reason of the force of said billboard or sign striking me in the manner it did, causing what is known and usually termed a 'compound comminuted fracture,' which said injury is serious and permanent, and has caused a great shock to my nervous and physical system. You are hereby notified that notice of the time, place, and manner of said accident, and extent of said injury, is given in pursuance of provision of law in that behalf, and that I will look to and hold the city of Omaha liable for the damages that I have sustained as a result of said personal injury. (Signed) Geo. P. Bemis."

Courts generally agree that statutes like the foregoing should be liberally construed, and we so held in *City of Lincoln v. O'Brien*, 56 Neb. 761. The statute is explicit that "the time when and the place where" the accident or injury happened shall be given. Those particulars were furnished in the notice. There must also be actual notice in writing of the accident or injury complained of, with a statement of the nature and extent thereof. It will be observed that this requirement is in the disjunctive—"the accident *or* injury." The accident and the injury are distinct and separate. The one precedes and is the cause of the other. The injury results from the accident. A statement of the nature and extent of the accident would not of necessity include a description of the injury. In like manner, a statement of the nature and extent of the injury might be given without reference to the accident which produced it. The court cannot increase the plaintiff's burden by construction, and we must hold that a statement

of the extent and nature of either the accident or the injury, and of the time when and place where it occurred, satisfies the statute. The nature and extent of the injury were plainly detailed in the notice above set out, and we think the statutory requirement was reasonably complied with. *Wright v. City of Omaha,* 78 Neb. 124; *Forbes v. City of Omaha,* 79 Neb. 6.

It is evident that the construction which we have given the section of the statute above quoted cannot be considered an inspiration on our part, for the same view seems to have occurred to others as early as 1905, when the legislature was called upon to, and did, amend the section under consideration by substituting the conjunction "and" for the disjunctive "or," and by adding other requirements which defendant is contending for here. This section now appears as 206, ch. 12a, Comp. St., and reads thus: "No city, governed by this act, shall be liable for damages arising from defective streets, alleys, sidewalks, public parks or other public places within such city, unless actual notice in writing, *describing fully the accident and nature and extent of the injury* complained of, *and describing the defects causing the injury, and stating* the time when *and with particularity the place where the accident occurred,* shall be proved to have been *filed with the city clerk* within *ten* days after the occurrence of the accident or injury." The words which we have italicized indicate very clearly that some one interested in saving the rights of metropolitan cities had discovered the weakness in the statute in force prior thereto, and secured the amendment above set out.

3. Is the verdict sustained by the evidence? In this connection defendant strenuously insists that the evidence conclusively establishes the fact that "the character of the storm that blew down the billboard was extraordinary and unprecedented. It was extraordinary with reference to the variation in velocity, in the variation in direction, in duration, and in the sudden shifting of the wind during high velocity." The government record wind

sheet of the storm was introduced in evidence and explained by the officers of the weather bureau. It appears from this record that between 5 o'clock P. M. and 7:10 o'clock P. M. of April 25, 1902, the wind in Omaha attained a velocity of from 29 to 62 miles an hour; that the highest velocity prior to the accident was 60 miles an hour; and that at the time of the overturning of the board it was blowing at not to exceed 50 miles an hour. The wind shifted frequently, coming at different times from as many points of the compass, and was very destructive in its effect. One firm had 2,357 lineal feet of billboard prostrated by the wind, whereas, in previous years, not to exceed 100 lineal feet had ever been blown down during any one storm. In some instances shingles were stripped from roofs, gable ends of houses, roofs of porches, and tin roofs of buildings were blown off, windows were blown in, sections of sidewalk were overturned, in one instance causing the death of a boy, and telephone wires were broken. Witnesses from various walks of life testified that the storm was the worst and most destructive that had occurred in Omaha during their residence in that city. On the other hand, it was shown by plaintiff from records of the weather bureau that within the 27 years next preceding 1902 the wind on five different occasions, viz., in 1901, 1896, 1889, 1880 and 1875, had attained the velocity of 60 miles an hour in Omaha. In 1900 the wind passed over the city at the rate of 59 miles an hour; in 1901 at the rate of 54 miles an hour; in 1899, 1897, 1892, 1891, 1890, 1880 and 1873, at the rate of 50 miles an hour; and from 1871 down to 1901, on various occasions, it recorded a velocity of from 40 to 48 miles an hour. During one storm the railway bridge across the Missouri river was blown down. On other occasions buildings were unroofed, plate glass windows blown in, and general destruction wrought. Residents of Omaha, testifying for plaintiff, said that the storm of April 25, 1902, was not worse than had occurred in that city every few years, and that in preceding years the winds had been as high and variable

as the one that overturned the billboard in this case. We cannot say, therefore, as a matter of law, that, in considering the evidence in this case, reasonable men might not differ as to whether or not the wind-storm of April 25, 1902, was of such a character that "the defendant city, in the exercise of ordinary care, would not be bound to anticipate and guard against." The last preceding clause is taken from an instruction of the court, given upon the request of defendant. *Omaha Street R. Co. v. Craig,* 39 Neb. 601; *Chicago, B. & Q. R. Co. v. Pollard,* 53 Neb. 730. The instructions adopted defendant's theory in nearly every instance, even to placing the burden on plaintiff of proving that his case was not within the exceptions of an "act of God." We cannot say that the evidence does not sustain the verdict.

4. Did the court err in overruling defendant's challenge of the juror Liddell? We think not. In the course of his examination the juror expressed the thought that he might have some sympathy for the plaintiff; but we think his examination fairly shows that this was nothing more than a fear that he *might* possibly have some sympathy for plaintiff. Among others, these questions and answers appear in the record. "By Mr. Connell: Q. Have you any knowledge of the facts of this case, except as you have heard them stated here in court? A. No; that is all. Q. Have you any bias or prejudice for any reason for or against either of the parties to this case, or anybody connected with it? A. Well, I might have a leaning one way; I might possibly have in it: Q. Have you any bias or prejudice for or against either of the parties? A. No, sir; I have not. No, sir; I have not. No, sir; just put myself in their position, that would be all. Q. But you would be able to try the case in accordance with the evidence and the law as the court would give it to you? A. I would, to the best of my ability. Q. If accepted as a juror you would do that? A. Do the best I could. Q. You believe yourself that you could do that and that you would do that, do you not? A. Well, I would try to. Q. You have no prejudice,

so far as either party is concerned? A. No, sir; I know none of the parties at all. Q. Admitting that you have sympathy, and I presume everybody would have sympathy for Mayor Bemis, taking into account his condition, what is the fact as to whether or not, notwithstanding any sympathy for him that you might have, by reason of his injuries, could not you fairly try and determine the case in accordance with the facts and the evidence? A. I think I could; I believe I could. By Mr. Breen: Q. Suppose the evidence on any given point of fact in this case was equally balanced, for instance, one man swearing one way and another the other way, directly the contrary on any given point, would not this sympathy and leaning toward the mayor that you have tend to resolve any doubt on such a point in his favor? A. I believe it would." The above question, it will be observed, was not a proper question, as it failed to include the statement of the rule requiring plaintiff to prove his case by a preponderance of the evidence. "Mr. Connell: Q. Do I understand that you do not think you would be able to decide a controversy in the evidence uninfluenced by sympathy? Would that sympathy for his injuries control you? A. No; it would not, unless, as Mr. Breen said, they were equally balanced; and in that case he would get the benefit of it. Q. Right there—you would give him the benefit of that condition? If the court would tell you in an instruction that it devolved upon the plaintiff to prove his case, and to prove negligence on the defendant by a preponderance of the testimony—if the court would instruct you that it would require a preponderance of the testimony on the side of the plaintiff to recover, then would you resolve the doubt where the parties stood even, or would you follow the instructions of the court? A. Well, if it would require a preponderance, I suppose I would have to go by the instructions of the court. Q. Would you not do so? A. I believe I would, under the circumstances. Q. And, if the judge would instruct you that the law is that the case of the plaintiff must be established by a preponderance of

the testimony, then you would follow that instruction? A. I would try to. Q. And you believe you could and would do it? A. I would do the best I could. Q. I say, you believe that you could and that you would? A. As near as I understood the instructions I would."

Counsel for defendant place great reliance upon *Curry v. State,* 4 Neb. 545, and other early cases in this court. We had occasion to consider those cases again at a later date, and in *Basye v. State,* 45 Neb. 261, cited with approval in *Dinsmore v. State,* 61 Neb. 418, 433, *Curry v. State, supra; Miller v. State,* 29 Neb. 437, and the other early cases are discussed and distinguished. In *Dinsmore v. State, supra,* we held: "The ruling of a trial court in deciding a challenge for cause will not be disturbed, unless an abuse of discretion is shown." On page 433 we said: "The evidence as a whole shows that any impression or opinion these jurors had was wholly hypothetical, which brings the case within the principles announced in *Basye v. State,* 45 Neb. 261, where all objections urged by defendant are discussed and resolved against him, and the earlier opinions of this court cited by defendant are discussed and distinguished." In *Coil v. State,* 62 Neb. 15, we again state: "The ruling of a trial court in deciding a challenge for cause will not be disturbed unless an abuse of discretion is shown." In *Keeler v. State,* 73 Neb. 441, we said: "If the *voir dire* examination of a juror, considered as a whole, does not show incompetency, a challenge upon that ground is properly overruled, although during his examination statements be made which, if unexplained, might be ground for challenge." The opinion is by SEDG-WICK, J., and fully supports the syllabus. In *Basye v. State, supra,* NORVAL, C. J., on page 278, states the rule very clearly: "Although it is competent and proper to put to a juror questions to elicit from him whether he could lay aside any opinion formed, and decide the case upon the evidence produced on the trial, yet it is the duty and province of the court, and not of the juror, to pass upon and determine the question of capability and whether or

not his opinion disqualifies him to act as a juror.   *   *   *
Manifestly, it is the duty of the trial court to decide as to
the fact of qualification of the person challenged from a
consideration of his entire examination and such other
evidence and circumstances as tend to throw light upon
the subject. The trial court in determining the fact of
qualification is not confined to the answers of the juror
alone, but may consider his appearance and general de-
meanor while undergoing the examination." The rule,
sustained by the overwhelming weight of authority, is
clearly announced by the supreme court of Iowa in the
recent case of *Croft v. Chicago, R. I. & P. R. Co.,* 134 Ia.
411, as follows: "The court is not restricted to the mere
form of words in which the answers of the venireman are
couched. His manner and appearance may be taken into
consideration. Here, too, much must be left to the discre-
tion of the trial court, and, as in other matters resting in
discretion, its action will not be disturbed except a clear
case of abuse is made to appear." This announcement of
the rule is fully sustained in the following cases outside of
this state: *Reynolds v. United States,* 98 U. S. 145, 156
(a case very similar in its facts); *Smith v. State,* 24 Ind.
App. 688; *Commonwealth v. Roddy,* 184 Pa. St. 274;
*Commonwealth v. Eagan,* 190 Pa. St. 10; *Kumli v. South-
ern P. Co.,* 21 Or. 505; *State v. Brown,* 130 Ia. 57; *Wil-
burn v. Territory,* 10 N. M. 402, 62 Pac. 968; *Jarvis v.
State,* 138 Ala. 17, citing *Reynolds v. United States,
supra; Schwarz v. Lee Gon,* 46 Or. 219; *Leigh v. Territory,*
85 Pac. (Ariz.) 948; *State v. Simas,* 25 Nev. 432; *Dolan v.
United States,* 116 Fed. 578; *People v. McGonegal,* 136
N. Y. 62; *Ruschenberg v. Southern Electric R. Co.,* 161
Mo. 70; *Brady v. Territory,* 7 Ariz. 12; *State v. Ekanger,*
8 N. Dak. 559, quoting from *State v. Church,* 6 S. Dak. 89;
*Baker v. State,* 88 Wis. 140; *Hardin v. State,* 66 Ark. 53,
citing *Reynolds v. United States, supra; State v. Summers,*
36 S. Car. 479; *Trenor v. Central P. R. Co.,* 50 Cal. 230;
*Williams v. Supreme Court of Honor,* 221 Ill. 152; *Gam-*

*mons v. State*, 85 Miss. 103; Thompson and Merriam, Juries, sec. 252; 1 Thompson, Trials, sec. 88.

Applying the law, as clearly announced by this and the other courts above cited, we hold that the trial court, in determining the fact of qualification of the juror Liddell, was not confined to his answers alone, but could consider his appearance and general demeanor while undergoing examination, and if, from his answers and a consideration of his appearance and general demeanor, the court was convinced, as it evidently was, that he was a fair and impartial juror, it was not an abuse of discretion to overrule the challenge. The answers of the juror fall far short of showing that he had any "unconditional and fixed" sympathy for Mr. Bemis, whom he did not know personally. He expressly stated that he had no prejudice, so far as either party is concerned, so that, at most, all that can be inferred from his examination is that he had a vague "hypothetical or conditional" feeling of sympathy for plaintiff, nothing more than any fair-minded citizen would have for anyone in plaintiff's unfortunate condition. The entire examination of the juror shows him to have been a very fair and frank man, just the kind of a man who would make a good juror. His answer, "Well, if it would require a preponderance, I suppose I would have to go by the instructions of the court," and again, "As near as I understood the instructions I would," were sufficient, when taken together with the court's observation of the juror while giving this testimony, to bring the question as to whether or not he should be excused within the discretion of the court. The court, after hearing all the answers and observing his demeanor, exercised its discretion in favor of his retention as a juror, and we cannot say that in so doing there was any abuse of discretion.

The case appears to have been tried with great care on the part of the court, and with signal ability on the part of counsel on both sides. No claim is made that the amount allowed by the jury is excessive, nor is the conduct of any

juror assailed. The judgment is just, and should be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.