IDA VIRGINIA BISBING, DEFENDANT IN ERROR, v. ASBURY PARK, PLAINTIFF IN ERROR.

Submitted July 11, 1910—Decided November 14, 1910.

Where a dangerous condition exists in a public park or way, in a portion thereof not leased, the power to rent portions only of such public lands having been conferred by statute, such condition not arising from or in consequence of the management or control of the municipality over the rented parts of the public lands, or connected therewith, the negligence of the public authorities in permitting such condition to exist, will not render such municipality liable to respond to the suit of one of the general public, injured in consequence thereof.

On error to the Supreme Court, Monmouth Circuit.

For the plaintiff in error, *Patterson & Rhome.*

For the defendant in error, *Durand, Ivins & Carton.*

The opinion of the court was delivered by

VOORHEES, J. This writ of error removes a judgment entered for the plaintiff in Monmouth County Circuit Court, in an action brought to recover damages for personal injuries sustained by the plaintiff alleged to be in consequence of the negligence of the servants and agents of the city of Asbury Park.

The case was tried before the court without a jury. It appeared that on the evening of the 30th day of August, 1906, the plaintiff was at a carnival or celebration in progress in the streets of the city of Asbury Park, and for the purpose of viewing the pageant, had gone upon the boardwalk, extending along the ocean, between seven and eight o'clock and walked up to about Seventh avenue and then turned to retrace her steps. The crowd was then "immense" as she expresses it, making it very difficult to walk, so she decided to leave the boardwalk and when near the corner of Second avenue turned into a narrower brick walk, some twenty-two feet in width, leading at right angles into Ocean avenue.

North of this brick walk or way were located a group of bath houses, and on the south side of it was a grass plot, on the same level with the walk. In the grass plot, about two and a half feet southerly from the walk, there was maintained by the city an upright water pipe three or four inches in height, and a lateral pipe, which, near the upright pipe, was exposed, there being a hole or depression in the ground about six inches deep, and some two feet in diameter.

The plaintiff thus describes the accident: "I hadn't gone very far before I felt my foot go in that hole. I caught it. It seemed to catch between something and threw me to the ground."

She also testified that there was so great a crowd that she

and her sisters who were with her could not walk together, but were making their way through it as best they could, and that there were just as many people on the grass as on the walk, and she did not realize that she was walking on the grass. The grounds were illuminated by electric lights. There was no railing or other barrier separating the cross-walk from the grass plot and no enclosure or protection about the pipes.

The defendant's negligence is thus set forth in the declaration, "that the defendant, a municipal corporation, was clothed with the powers and subject to the duty by and through its public grounds commission, among other things, of keeping sound, safe and serviceable for public use all the parks and public places, except the streets and avenues, in said city of Asbury Park and particularly the public place known as the beach front, lying east of Ocean avenue * * * yet the defendant did not keep said public place known as the beach front * * * sound, safe and serviceable for public use and travel," &c.

It is not controverted and could not well be under the law as expounded in this state, since the year 1840, that in the absence of statute, an action will not lie against a municipal corporation at the instance of an individual who has sustained special damage in consequence of the neglect of such corporation in the performance of a public duty. *Freeholders of Sussex* v. *Strader*, 3 *Harr.* 108; *Livermore* v. *Freeholders*, 5 *Dutcher* 245; affirmed, 2 *Vroom* 507; *Pray* v. *Jersey City*, 3 *Id.* 394; *Wild* v. *Paterson*, 18 *Id.* 406; *Carter* v. *Rahway*, 26 *Id.* 177; affirmed, 28 *Id.* 196; *Paterson* v. *Erie Railroad*, 49 *Id.* 592.

The plaintiff, however, seeks to bring herself within an exception to this general rule, and argues that the negligent act was committed by the city, not in the discharge of a strictly public duty, but while holding and dealing with the property, whereon the neglected dangerous condition existed, as its own and for its own benefit, by receiving income therefrom, just as a private owner would lease his property and receive the rents therefrom.

It is contended by the plaintiff that when a municipal corporation so deals with its property, that is, as its own, as distinguished from the property which it holds strictly for public benefit, the law discriminates between negligent acts done in the discharge of a public duty wherein no liability to the corporation will attach, and acts done, not in the performance of a public function, but in what has been called, by way of distinction and for lack of a better designation, its private capacity for which an action may be maintained against the municipality.

The principle here invoked has authority in several well-considered cases, among which are *Bailey* v. *Mayor, &c., of New York,* 3 *Hill* 531; *Western Savings Fund Society* v. *Philadelphia,* 31 *Pa. St.* 185; *Scott* v. *Mayor of Manchester,* 3 *H. & N.* 204; *Oliver* v. *Worcester,* 102 *Mass.* 489, and *Hill* v. *Boston,* 122 *Id.* 344. In the last-cited case the opinion by Chief Justice Gray is most instructive, and in it he has collected and critically reviewed all the cases, both English and American, on the subject of public liability for negligent acts.

The exception above urged finds some recognition in passing allusions to it in at least two cases in our Supreme Court— *Pray* v. *Mayor, &c., of Jersey City, supra,* and *Jersey City,* v. *Kiernan,* 21 *Vroom* 246.

In order to apply this distinction to the present case, the plaintiff has shown that the accident occurred upon lands acquired by the city of Asbury Park by purchase from James A. Bradley by deed of April 4th, 1903. This deed conveyed a strip of land bordering on the ocean, together with the boardwalk, piers, pavilions, &c. The city was enabled to accept the conveyance and acquire the property by virtue of an act of the legislature of 1900 entitled "An act to authorize cities bordering on the Atlantic ocean to purchase lands in any such city bordering on the ocean and adjacent lands thereto in such city, for public purposes and to improve the same and to issue bonds for such purposes" (*Pamph. L.* 1900, *p.* 285), and the (several amendments to said act, passed in 1902 and 1904. *Pamph. L.* 1902, *p.* 805; *Pamph. L.* 1904, *p.* 199. The city in

the deed covenanted that the lands were to be used by the city for the purposes set forth in the act and for such other purposes and uses as might be then or thereafter authorized by law.

An examination and construction of the enabling act are necessary, not only to characterize the lands thus acquired, but as well to determine whether the neglect of the municipal agents arose by the non-performance of a public duty.

The first section of the act authorizes the acquisition by purchase or condemnation of lands bordering on the ocean for "public purposes and for places of resort for public health and for recreation, and to improve the same." A bond issue is sanctioned to provide the funds.

By the second section the city is required, after acquiring such lands to establish a *"Public Grounds Commission,"* consisting of three commissioners with three years' terms, to be appointed by the mayor and confirmed by the governing body, to serve without compensation. This commission, by section 3, is given the entire supervision and control of all parks and public places in the city, except the streets and avenues, including all lands then owned by the city or thereafter to be acquired for the purposes mentioned in the act, also full power to erect public buildings on the grounds and to make and direct all improvements, alterations, repairs and expenditures upon and on account of said parks, places and lands.

The fourth section of the act deals with the defraying of the expenses of maintenance and the construction of buildings, roadways and walks; the paying of the principal and interest of the bonds, and the expense of the general improvement of said public parks and places of public resort.

The commissioners are then given power to set apart one or more places or pavilions for holding concerts and entertainments to which an admission fee may be charged.

They are also authorized to operate the bathing grounds and bath houses in the event of their inability to rent the same and until they may be able to do so, in order to prevent great public inconvenience and loss to the city. They may also lease any part of the property so acquired for any special term not exceeding three years, for any purpose not incon-

sistent with the laws governing the city, which may seem proper for the improvement of the same. They may also rent spaces for the erection of a pier or piers with the consent of the council. These rentals are then directed to be applied in the payment of the operating expenses and necessary repairs and improvements in said public parks, and the balance applied to the payment of the principal and interest of the bonds.

The principle underlying the exemption in favor of a municipality is rested upon the fact that the duty is owed to the public, the neglect of which forms the basis of the action, although such neglect may be injurious in varying degrees to every individual composing the public. Where, however, the duty is specifically owed to an individual, such individual has a right of action whenever the breach of that duty has occasioned injury to him. This is made clear by an examination of the opinion by the late Chief Justice Beasley in *Jersey City* v. *Kiernan, supra.* Therefore, in order to decide whether the present action is maintainable against the city, it must first be determined whether the neglect properly to guard the water pipe which caused the injury was a duty owed to the public. Aside from the fact that the dangerous condition existed, not in a public way, but upon a grass plot evidently not intended to be walked over (which, I think, under the circumstances, it is not necessary to discuss, for the case has not been tried on that theory), it cannot be doubted that the duty owed was a public duty.

I say "public duty" because the lands were originally acquired under the conveyance and by specific legislative sanction for public purposes and for a place of resort for public health and recreation. The commissioners were public appointive officers, serving without compensation, and under their control were placed, not only the particular lands acquired by the Bradley conveyance, but all the parks and public places in the city, except the streets and avenues. · Nor is it argued or seriously contended that the brick way, in proximity to which the dangerous condition existed, was not a public way and free for all citizens to pass and repass. The only difference between that and the ordinary streets and avenues

is the fact that it existed within the confines of the public park.

It cannot be doubted that the act was designed primarily to create a public park, and that in establishing a public commission to serve without emolument, to care for it as well as for all other public places in the city, it created public officers whose acts in so doing are public acts exercised for the benefit of the general public.

I conclude, therefore, that thus far there is no difference to be noted between an action brought by an individual to recover damages sustained for the non-repair of the ordinary public street and the circumstances surrounding the present action.

But it also appears in the case that upon the lands so acquired under the Bradley deed, there were "constructed piers, pavilions, bath houses, a restaurant, soda water stands, novelty stands, confectionery stands, cigar stands and other buildings owned by the city, and from which the city, by way of rents, admissions, charges and bathing privileges, derived a revenue." It as well also was in receipt of a revenue from ground rents for portions of said grounds, for rolling chair privileges, weighing machines, telescope and charges for the privilege of going to a place of landing of a sailing yacht.

By reason of the income from these buildings and from the privileges granted by the commission, the city became liable, it is said, for the negligence of its servants in not using due care to keep safe all parts of the lands upon which they were erected, inasmuch as the boardwalk leads to all of said buildings, attractions and privileges, and the brick cross-walk was one of the principal walks whereby the boardwalk was reached from Ocean avenue.

Hence, the insistence is, that the defendant was managing and dealing with this whole property as a private owner would, and that it was held by the city for its own advantage and profit.

Has the plaintiff brought herself within the exception thus invoked? As before indicated, the primary object of the purchase, and of the act permitting it, was to acquire lands for

public or park purposes for public resort. The construction of a boardwalk along the ocean, of the walks leading to it through the several grass plots, most appropriate to make it attractive for public resort and preserve its park-like appearance, the installation of the very water pipe (an appliance designed and used not for private gain but for sprinkling the grass and public ways), in consequence of which the accident occurred, all indicate the public character of the place and the effort to carry into effect this most obvious purpose of the act.

Now, the right to lease and accept rentals from the land was not an unlimited right in the public ground commission. They had power to set apart one or more places for pavilions, not the whole of the lands. They had power over the bathing grounds and might take charge of the bath houses until they could be rented, referring also to a part only of the lands purchased. They might lease any part of the property so acquired, not the whole of it. It must be here mentioned that, to the jurisdiction of this commission, were committed, not only the Bradley tract, but also all the parks and public places in the city (except the streets), then owned by the city or thereafter to be acquired. Therefore, the privilege of leasing any part of the property, it would seem, was not confined, under the act, to the specific lands conveyed by the Bradley deed, but extended to all the lands over which the commission had control.

It would not be seriously contended that a dangerous condition, existing in a park, territorially disconnected with the Bradley lands, would visit liability upon the city because of the rental derived from buildings located upon the Bradley tract, or *vice versa.* If not, then if the plaintiff's insistence be correct, it must be because the dangerous condition existed within the confines of the Bradley tract, upon some parts of which, specially set apart and rented, were located the income-producing structures, thus making the mere territorial boundaries of the whole purchase a magic enclosure to visit liability upon the public.

Nor would it be reasonable to assert that, because a city street led to another, upon which a rented building was located,

this circumstance laid the foundation for recovery because of the dangerous condition of the former street.

It is perfectly apparent that the condition was in nowise consequent upon the renting, that it arose quite independently thereof, and upon lands which, under the powers granted by the act, has been reserved from the leased portions of the tract, or, more properly speaking, that the rented portions had been set apart from the public park.

Nor did the condition result from any act performed or omitted in connection with the properties thus separated and rented.

In *Oliver* v. *Worcester, supra,* the plaintiff was walking in a foot path within the public common in the city of Worcester and fell into an excavation which had been caused in the course of the reparation of a building standing in the common which the city had leased and was receiving rent for. The court said:

"If, in the course of repairing this building, the servants of the city negligently suffered the adjoining land within its control to be in a dangerous condition, the city was responsible."

It will be perceived that the negligence there grew out of the control of the property actually in use by the city in its private capacity. It arose directly from the management of the rented premises, a condition of affairs clearly distinguishable from this case.

Neither the grass plot nor the way upon which it bordered produced revenue to the city. They still remained to serve the public uses humanely and beneficently made possible by the law givers, to promote the health and recreation of all citizens.

In keeping up the public grounds, the agents of the city were fulfilling a corporate duty imposed by law, from which the city derived no benefit in its corporate capacity. This was a governmental act, and not the exercise of a power conferred for its own benefit. *Curran* v. *City of Boston,* 151 *Mass.* 505; *Moffitt* v. *City of Asheville,* 103 *N. C.* 237.

Where a dangerous condition exists in a public park, or

way, in a portion thereof not leased, the power to rent portions only of such public lands having been conferred by statute, such condition not arising from or in consequence of the management or control of the municipality over the rented parts of the public lands, or connected therewith, the negligence of the public authorities in permitting such condition to exist, will not render such municipality liable to respond to the suit of one of the general public, injured in consequence thereof.

The judgment will be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 14.