[Civil No. 1434.   Filed April 9, 1915.]

[147 Pac. 732.]

## H. C. MORRELL, Appellant, v. CITY OF PHOENIX, a Corporation, Appellee.

1. MASTER AND SERVANT—POWERS OF MUNICIPAL CORPORATION—DUTY OF COMMON COUNCIL.—Under Phoenix City Charter (Laws 1881, No. 58), article 13, section 1, as amended by Laws of 1885, No. 61, giving the common council of Phoenix exclusive control over the streets, and Civil Code of 1901, paragraph 465, giving to cities power to light and cleanse their streets, the sprinkling of streets is within the control of the common council, and it is their duty, in employing men, to furnish them with safe teams and wagons.

2. MASTER AND SERVANT—INJURIES TO SERVANT—DELEGATION OF LIABILITY.—The duty of a master to furnish his servants with a reasonably safe place in which to work and with reasonably safe instrumentalities cannot be delegated so that the master may escape liability.

3. MASTER AND SERVANT—CONTRACTS OF SERVICE—LAW.—Contracts are to be construed in connection with the law in force at the time of their execution, and the liability of a master is dependent upon the state of the law at the time the contract of service was entered into.

4. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRACTS.—Contracts whereby a servant agrees that the master shall not be liable for injuries are not favored, and, in the absence of statutory permission, are against public policy.

5. MASTER AND SERVANT—LIABILITY OF MUNICIPAL CORPORATION—STATUTE.—Phoenix City Charter (Laws 1881, No. 58), article 18, section 7, as amended in 1885 (Laws 1885, No. 61), provides that the municipality shall not be liable to anyone for any loss or injury to person or property growing out of, or caused by, the malfeasance, misfeasance or neglect of any officer or other authority. Plaintiff, who was engaged in sprinkling streets for the city, was injured owing to the unruly horses with which he was furnished. *Held*, that, as the city could only act through its officers, it was not liable for plaintiff's injuries; for, while Constitution, article 18, section 3, prohibits any person, company, association or corporation from contracting with its servants that it shall be free from liability, that provision, in view of other sections of the same article, applies only to private corporations.

6. MUNICIPAL CORPORATIONS — CHARTER — LIABILITY — CONSTITUTIONAL PROTECTION.—Phoenix City Charter (Laws 1881, No. 58), article 18, section 7, as amended in 1885 (Laws 1885, No. 61), declaring

that the city of Phoenix shall not be liable for the misfeasance or nonfeasance of its officers, is not in violation of Constitution, article 18, section 6, declaring that the right of action to recover damages for injuries shall never be abrogated.

[As to liability of city for negligence or misconduct of agents or officers, see notes in 53 Am. Dec. 320; 30 Am. St. Rep. 376.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Affirmed.

The facts are stated in the opinion.

Mr. R. M. Fleming, for Appellant.

Mr. George D. Christy, for Appellee.

ROSS, C. J.—The appellant, as plaintiff, sued for damages for personal injuries received while in the employ of the defendant city as a driver of one of its street-sprinkling carts.

The negligence charged in the complaint is that the defendant city knowingly furnished plaintiff a fractious, unruly and unmanageable team of horses, and that by reason thereof, on June 15, 1913, the team ran away, dragging him for a considerable distance along the street, until he was thrown upon the ground and the sprinkling-cart passed over his body, inflicting permanent and serious injuries. The defendant interposed a general demurrer to the complaint, which was sustained. The plaintiff refusing to amend, judgment was entered dismissing complaint.

The position taken by the city is that its charter exempts it from liability in a case of this kind, and that is one of the points raised and urged under the general demurrer. If this point is well taken, it is not necessary that other points made by defendant be discussed or passed upon. It seems quite certain that it was the intention of the legislature of the territory of Arizona, judging by the language used, that Phoenix should be immune from damages for injuries or loss occasioned by or through the malfeasance, misfeasance or neglect of duty of any of its officers or other authorities. The city received its charter from the territorial legislature in February, 1881. Laws 1881, No. 58. In 1885 the legislature amended the charter (Laws 1885, No. 61), and one of the

sections of the amendatory act was section 7 of article 18, which provides as follows:

"The said corporation shall not be liable to anyone, or for any loss or injury to person or property growing out of, or caused by the malfeasance, misfeasance, or neglect of duty of any officer, or other authorities of said city; or for any injury or damages happening to such person or property on account of the condition of any zanje, sewer, cesspool, street, sidewalk or public ground therein; but this does not exonerate any officer of said city, or any other person, from such liability, when such casualty or accident is caused by the willful neglect of duty enforced upon such officer or person by law, or by the gross negligence or willful misconduct of such officer or person in any other respect."

At the time of the accident the affairs of the city were carried on by and through what was known as a common council, consisting of a mayor and four councilmen. By the charter, article 13, section 1 (Laws of 1885), the common council was to have and exercise exclusive control over the streets, alleys, avenues and sidewalks of the city, with the power to clean or otherwise regulate and improve the same. Paragraph 465, Revised Statutes of 1901, also gave to cities and common councils in cities power to light and cleanse their streets, alleys and avenues. The matter of sprinkling the streets—a necessary step to their cleansing—was therefore under the control and direction of the common council. It was for them to say whether the streets should be sprinkled, and to design and provide the methods and means to accomplish that end. To the council's lot fell the duty of employing men to do the actual work of sprinkling the streets, of furnishing the workmen with sprinkling-carts and with teams to draw the carts. It was the duty of the city to furnish the plaintiff a reasonably safe place in which to work and reasonably safe instrumentalities with which to do his work. The plaintiff contends that this duty of supplying him with reasonably safe instrumentalities with which to prosecute his work was personal to the city, and could not be delegated to others, and that, in contemplation of law, it was the negligent act of the city that caused the plaintiff's injury.

It is the law that the master may not delegate this particular duty to others, and thereby evade responsibility; but

XVI Ariz.—33

that is not upon the theory that he himself is personally negligent, but presupposes negligence in others for whose acts he is responsible. And in this case the act of common council in turning over to the plaintiff an unmanageable team was the act of the city, and, if the council was guilty of negligence in that act, the city was likewise negligent, and probably would be liable in damages but for the exemptions from liability for the malfeasance, misfeasance and neglect of duty of its officers.

The plaintiff further contends that the provisions of section 7, article 18, of the charter, attempting to relieve the city from damages occasioned by the neglect of its officers, is unconstitutional and void. Without enumerating the reasons he assigns to support his contention on this point, we may say that in our search we have found such statutes generally upheld by the courts.

In 28 Cyc. 1343, it is said:

"A city may be specifically exempted from liability by its charter"; citing *Parsons* v. *San Francisco,* 23 Cal. 462, which fully supports the text.

In *Goddard* v. *Lincoln,* 69 Neb. 594, 96 N. W. 273, where the principle we have was before the court, it was said:

"A city is a creature of the legislature; its rights, duties and liabilities are to be measured by the statute under which it exists. Early in the history of this state a city was held liable for injuries resulting from the defective condition of its streets, on the ground that it had exclusive control of such streets, and the legislature had placed ample means at its disposal to maintain its streets in a safe condition. *Omaha* v. *Olmstead,* 5 Neb. 446. The principle announced in that case has since been frequently applied. *Aurora* v. *Cox,* 43 Neb. 727, 62 N. W. 66; *Lincoln* v. *O'Brien,* 56 Neb. 761, 77 N. W. 76; *Beatrice* v. *Reid,* 41 Neb. 214, 59 N. W. 770. As the liability in such cases must rest on some express or implied provision of the statute, it is clear that the legislature may place such limitations upon it as it may deem proper, or, for that matter, take it away entirely."

The legislative power to exempt municipal corporations from liability for the negligence of its officers has been recognized in personal injury cases arising out of neglect to keep streets in safe condition for travel in Oregon under charters

whose provisions were very similar to the charter of the defendant city.  *O'Harra* v. *Portland,* 3 Or. 525; *Rankin* v. *Buckman,* 9 Or. 253.  In *Mattson* v. *Astoria,* 39 Or. 577, 87 Am. St. Rep. 687, 65 Pac. 1066, a provision in the charter of Astoria exempting both the city and its officers from liability for injuries occasioned by negligence was held to be repugnant to the state Constitution, guaranteeing to every person a remedy by due course of law for injury done him in person, property or reputation, in that such a statute deprived the injured person of a right of action against anyone and left him without remedy.  The court, however, used this language:

"That it is within the power of a legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair is unquestioned"— citing with approval the O'Harra case.

The court in *Wilmington* v. *Ewing,* 2 Penne. (Del.) 101, 45 L. R. A. 79, 43 Atl. 307, reviewed most, if not all, of the decisions bearing upon the power of the legislature to exempt a municipal corporation from liability for damages suffered because of the negligence of its officers to keep its streets in suitable condition for travel, and announced its conclusion as follows:

"The power to alter, modify or take away the liability of municipal corporations for injuries sustained from defective streets and sidewalks has been frequently exercised by state legislature and sustained by the courts."

But the cases cited by us have not directly involved the power of the legislature to exempt the master from liability for damages occasioned by the neglect of duty or malfeasance or misfeasance of his employees, whereby his servant has been injured.  The relation existing between plaintiff and defendant at the time of injury was that of master and servant. The master was the city.  It is a creature of the legislature. Its powers, duties and functions are prescribed by law.  That law has said:

"The said corporation shall not be liable to anyone [or] for any loss or injury to person or property growing out of, or caused by the malfeasance, misfeasance or neglect of duty of any officer, or other authorities of said city. . . . "

The city could exercise and perform its powers, duties and functions only by "officers or other authorities." Whoever furnished the team to plaintiff must have been a person falling within the words "officers or other authorities" of said city for whose "neglect of duty," if any, the city is expressly exempt. The plaintiff accepted employment of defendant knowing that the charter of defendant exempted it from liability for any injury he might sustain while in its employment by reason of the malfeasance, misfeasance or neglect of duty of any of its officers. It is well settled that contracts are to be construed in connection with the law in force at the time of their execution. The law enters into and forms a part of every contract. While, independent of law authorizing it, contracts purporting to exempt the employer from liability for his own negligence or that of his employees have been viewed with disfavor, and correctly and justly so, as being against public policy, deference to the legislature requires a more favorable attitude be assumed toward such contracts when authorized by statute, especially as applied to contracts of a municipal corporation. There is, indeed, a prohibition in the Constitution (section 3, article 18) against "any person, company, association or corporation" requiring such a contract from servants or employees; but the provisions of this section do not have reference to municipal corporations. Sections 1 and 10 of article 18 designate the last-named corporations as "political subdivisions of the state" and "any municipality." The word "corporation," wherever used in said article 18, entitled "Labor," has reference to private corporations, and not to cities or towns. If the municipal corporation of Phoenix could make such contracts before the Constitution was adopted, it may still do so, if its charter is unchanged. The constitutional malediction of such contracts does not extend to contracts of employment by the city. While we do not concur in a policy that exempts a city from the results of its negligence or the negligence of its officers, we may not set aside, or control or nullify that policy as declared by legislative enactment, unless we find the same repugnant to some provision of the Constitution.

The statutory test of the liability of a municipal corporation, as given by Shearman & Redfield, Law of Negligence, section 254, volume 2, is:

"It is impossible to state a general rule by which the liability of every municipal corporation of every class, for either the nonfeasance or misfeasance of its officers, may be determined. The only test of a particular corporation is the statute under which it exists, and which confers its powers and prescribes its duties. Subject to constitutional limitations, the state may, either in the charter, as a condition of a grant of powers, or subsequently by an independent act, impose upon such bodies such burdens and charges as are thought most likely to accomplish the object of their creation; or it may exempt them altogether from certain kinds of liability. It is a universally recognized principle that they have no powers, except those given by statute, either expressly or as necessarily incident to their express powers, and that their liabilities are to be determined upon a true interpretation of the statutes creating or governing them.''

There is no provision of the state or the federal Constitution violated by section 7, article 18, of the city charter, so far as we have been able to discover. The contention of plaintiff that it violates section 6, article 18, of the state Constitution, providing that the right of action to recover damages for injuries shall never be abrogated, is not tenable, for the reason that said section only undertakes to preserve rights already cognizable by law, and does not undertake to create new rights of action. When the Constitution was adopted the charter of the defendant was in force and effect as a law of the territory, and was carried forward as a law of the state where not repugnant to the Constitution, and by that law the defendant city is exempt from liability for the injury complained of.

We regret exceedingly that the legislature has by its act prevented us from ordering the submission of plaintiff's claim to a jury of his country, for we are unable to see why, as a matter of justice, the city of Phoenix should not be held liable for its neglect or the neglect of its officers.

Judgment affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J., Dissenting.—I am unable to concur in the order of the majority of the court affirming the judg-

ment sustaining the general demurrer to the complaint. Briefly, I will state some of the reasons that influence my dissent.

Paragraph 468, Civil Code of 1913, provides:

"The defendant may demur to the complaint when it appears upon the face thereof, either: . . . (6) That the complaint does not state facts sufficient to constitute a cause of action."

The demurrer filed by the defendant is as follows:

"Comes now the defendant . . . and demurs to the plaintiff's complaint filed herein, for the reason that the facts stated in plaintiff's complaint do not constitute a cause of action against the defendant."

The court sustained this demurrer, and, plaintiff refusing to amend his complaint, judgment was ordered and rendered for defendant.

The briefs of the parties here filed seem to agree that the court made this ruling because in the special charter of the defendant, city of Phoenix, this provision was enacted (section 7, article 18, Act of Territorial Legislature approved March 11, 1885):

"The said corporation shall not be liable to anyone, or for any loss or injury to person or property growing out of, or caused by the malfeasance, misfeasance or neglect of duty of any officer, or other authorities of said city; or for any injury or damages happening to such person or property on account of the condition of any zanje, sewer, cesspool, street, sidewalk or public ground therein; but this does not exonerate any officer of said city, or any other person from such liability, when such casualty or accident is caused by the willful neglect of duty enforced upon such officer or person by law, or by the gross negligence or willful misconduct of such officer or person in any other respect."

The effect of this provision is to expressly withhold permission of the sovereign to sue one of its agencies in a specified class of actions; that is, to recover for injuries suffered from the negligence of the designated officers.

The complaint is not subject to demurrer for the reasons assigned, because the defect averred does not appear upon the face of the complaint. On the other hand, the charter in force at the time the action was commenced gave general

permission to sue and be sued without exception, and that charter was sufficiently pleaded in the complaint to bring its terms within judicial notice. Paragraph 432, Civ. Code, 1913; section 2 of article 13, state Constitution.

By reference to the present charter of Phoenix, the fact appears that it was in effect on December 1, 1913, and the suit was commenced on May 5, 1914, five months after the charter became effective. The charter contains this provision: "(c) It may sue and be sued, plead and be impleaded, in all courts of law or equity, in all actions and proceedings whatsoever"—thereby granting permission to sue in all classes of actions, including the class in which the permission had been theretofore expressly withheld.

In *Beers* v. *Arkansas,* 20 How. 527, 15 L. Ed. 991, the supreme court of the United States had under consideration the question of the right to sue a state when the state had not granted permission. The court, speaking by TANEY, C. J., said:

"It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another state. And, as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it."

Such a vast number of cases have approved the principle enunciated in this case that a reference to them seems superfluous, but, for convenience, I refer to note appended to the above case in 20 How. 527, 15 L. Ed. 991 (Ex. Ann.).

If the right to grant or withhold the permission to sue is a privilege of sovereignty, and, where the permission has not been granted, the sovereignty may waive it, then it follows that the privilege has been waived by an appearance in the cause by filing a general demurrer alleging that the complaint fails to state facts sufficient to constitute a cause of action. Such appearance and consequent waiver are equal to the granting of permission to the plaintiff to sue in that

instance and consent to the court to enter judgment in the cause on the issue made. If the state had been named as party defendant, no possible doubt exists that such would have been the conditions. And I am of the opinion that, because the sovereignty withholds its permission to be sued either impliedly by its silence on the subject, or expressly by a positive enactment, and while withheld in either manner a matter transpires between an individual and the sovereignty, which, had the same matter transpired between the individual and a private person, a cause of action would have arisen in favor of the individual against the other person, under such circumstances, the individual has a valid cause of action against the sovereignty, which is unimpaired as a cause of action, but unenforceable, because the courts have no jurisdiction to entertain the action against the sovereignty without its consent (*Bank of Washington* v. *Arkansas,* 20 How. 530, 15 L. Ed. 993); and that, when the sovereignty has granted permission to sue it generally, then, no other legal impediment intervening, the action may be commenced and prosecuted against the sovereignty upon the cause of action arising prior to the grant of permission to sue, upon the principle set forth in *Beers* v. *Arkansas, supra,* and recognized and applied in *Bank of Washington* v. *Arkansas, supra,* and numerous other authorities.

The duty to care for public roads outside of incorporated cities and towns is a public duty of the state. The state has expressly delegated that duty to the incorporated cities and towns over the streets, alleys and public grounds within the cities and towns. Then the defendant, city of Phoenix, while cleansing and caring for its streets, was engaged in the performance of a public duty, a duty in which the inhabitants of the incorporation—the public—were alike interested and benefited. In the performance of that duty the defendant was the sovereign and entitled to all the privileges incident to the matter in hand to which the state would be entitled had it directly performed the duty in the same manner. In prosecuting an action against the city for an injury received through the negligence of the city, the plaintiff is required to bring himself within the conditions prescribed by law before he can maintain his action. *Sargent* v. *Town of Gilford,* 66 N. H. 543, 27 Atl. 307.

When this action was commenced no special conditions were prescribed. The charter provision granted sufficient permission to sue. The charter was sufficiently pleaded in the complaint, as measured by a general demurrer, to show this permission, and consequently to set forth the jurisdiction of the court to entertain the suit, and the demurrer admitted these essential facts.

In my opinion, the order sustaining the general demurrer was reversible error, and the judgment should be reversed and the cause remanded.