SUPREME COURT OF ARIZONA
En Banc

WILLIAM H. DICKEY, on his own      )   Arizona Supreme Court
behalf and as Guardian Ad Litem    )   No.  CV-99-0273-PR
of the minor child WILLIAM         )
DICKEY; REBECCA CARLSON DICKEY,    )   Court of Appeals
wife of WILLIAM H. DICKEY; and     )   Division One
JANE DOE, natural mother of        )   No.  1 CA-CV 98-0026
minor WILLIAM DICKEY,              )
                                   )   Coconino County
            Plaintiffs-Appellants, )   Superior Court
                                   )   No.  CV 95-0564
                  v.               )
                                   )
CITY OF FLAGSTAFF, a municipal     )
corporation,                       )
                                   )   **O P I N I O N**
            Defendant-Appellee.)
_____    )

Appeal from the Superior Court in Coconino County
The Honorable J. Michael Flournoy, Judge

**AFFIRMED**

Opinion of the Court of Appeals, Division One
197 Ariz. 422, 4 P.3d 965 (App. 1998)

**VACATED**

Dale H. Itschner                                    Flagstaff
and
Jerry L. Smith                                      Flagstaff
Attorneys for Plaintiffs-Appellants

MANGUM WALL STOOPS & WARDEN, P.L.L.C.               Flagstaff
      by   Daniel J. Stoops
Attorneys for Defendant-Appellee

ARIZONA TRIAL LAWYERS ASSOCIATION                     Phoenix
      by   Amy G. Langerman
Attorneys for Amicus Curiae, Arizona
      Trial Lawyers Association

**B E R C H**, Justice

¶1       This case presents a challenge to the constitutionality of Arizona's recreational use statute, Ariz. Rev. Stat. ("A.R.S.") § 33-1551 (2000).[1]  We conclude, as did the trial and appellate courts, that the law is constitutional.

## FACTS[2]

¶2       On January 7, 1995, William Dickey's step-mother took ten-year-old William and two of his siblings to go sledding.  She saw people on Mars Hill in Thorpe Park in Flagstaff, so she dropped the children off and left to park the car.  While she was gone, William began sliding down Mars Hill on a rubber tube.  About a quarter of the way down the hill on his first run, William crashed into a tree and was severely injured.

¶3       Although Mars Hill had been used as a wintertime recreational area since the early days of the City, the City had posted signs warning that Mars Hill was unsafe for sledding.  The evidence conflicts on whether the signs were in place on the day of

---

[1]       This opinion refers to the current version of A.R.S. § 33-1551, which is essentially the same as that in effect at the relevant time.

[2]       Because summary judgment was granted to the City, we review the facts in the light most favorable to Petitioners, the parties against whom summary judgment was entered. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990) (subscribing to the views of Justice White in *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986) (citations omitted)).

the accident.

¶4     William's parents, the Petitioners, sued the City to recover for William's injuries. The City defended on the ground that, because the Park was held open for recreational use, Petitioners could not prevail unless they showed that city employees had been grossly negligent or had wilfully or maliciously caused injury to William. The trial court granted summary judgment for the City, finding that Petitioners failed to present any evidence that the City had acted wilfully, maliciously, or grossly negligently. The trial court further determined that the recreational use statute did not abrogate William's negligence cause of action and therefore did not violate Article 18, Section 6, of the Arizona Constitution.

¶5     The court of appeals affirmed. *Dickey v. City of Flagstaff*, 197 Ariz. 422, 430, ¶¶ 36-37, 4 P.3d 965, 973 (App. 1999). We granted review to decide whether the recreational use statute's requirement that a plaintiff show gross negligence or wilful or malicious conduct abrogates a cause of action that William would have otherwise enjoyed, in violation of the anti-abrogation provision of the Arizona Constitution. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-2101 (1994).

**DISCUSSION**

**A.  The Recreational Use Statute**

¶6      Arizona's recreational use statute, A.R.S. § 33-1551, limits a landowner's liability to parties injured while on the land for recreational purposes.  It provides that the owner of land held open for public use "is not liable to a recreational or educational user except upon a showing that the owner . . . was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user."  *Id.* § 33-1551(A).  The statute defines grossly negligent conduct as conduct that demonstrates "a knowing or reckless indifference to the health and safety of others."  *Id.* § 33-1551(C)(2).

¶7      The statute, based on a model act proposed by the Council of State Governments, was first enacted here in 1983.  *See Ward v. State*, 181 Ariz. 359, 361-62, 890 P.2d 1144, 1146-47 (1995).  Its purpose is to encourage landowners to open their lands to the public for recreational use.  *Id.* at 362, 890 P.2d at 1147.  It accomplishes this goal by "limiting their liability toward persons entering thereon for such purposes."  *Id.* (quoting *Suggested State Legislation on Public Recreation on Private Lands*, 24 Council of State Governments 150 (1965)).  Since the publication of the model act in 1965, all fifty states have enacted recreational use statutes limiting the liability of landowners who open their land to recreational users.  Terrence J. Centner, *Tort Liability for*

-4-

*Sports and Recreational Activities: Expanding Statutory Immunity for Protected Classes and Activities*, 26 J. Legis. 1, 2 (2000) (citing the recreational use statutes of all fifty states).

**B.** **The Constitutionality of the Recreational Use Statute**

1. <u>The Anti-Abrogation Provision</u>.

¶8      William argues that the recreational use statute is unconstitutional because it deprives him of the right to bring a lawsuit sounding in simple negligence against the City of Flagstaff.  Instead, because of the statute, he must prove that the City was grossly negligent, in violation, he maintains, of the anti-abrogation provision of the Arizona Constitution.  Ariz. Const. art. 18, § 6.

¶9      The anti-abrogation provision states that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."  *Id.*  It protects from legislative repeal or revocation those tort actions that "either existed at common law or evolved from rights recognized at common law."  *Cronin v. Sheldon*, 195 Ariz. 531, 539, ¶ 39, 991 P.2d 231, 239 (1999); *see also Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 14, 730 P.2d 186, 191 (1986) (observing that the anti-abrogation provision extends the right to recover damages for injuries to all actions existing under the common law); *Morrell v. City of Phoenix*, 16 Ariz. 511, 517, 147 P. 732, 735 (1915) (superseded by statute) (finding that

the anti-abrogation provision preserves those "rights already cognizable by law, and does not undertake to create new rights of action"). Therefore, to fall within the protection of the anti-abrogation provision of the Arizona Constitution, William's right of action for simple negligence against the City must have existed at common law or have found its basis in the common law at the time the constitution was adopted. *See Cronin*, 195 Ariz. at 539, ¶ 39, 991 P.2d at 239. We conclude that William has failed to establish that a right of action for simple negligence, against a municipality engaged in a governmental function, existed at common law.[3]

    2.   <u>Municipal Liability Under the Common Law</u>.

**¶10**    In 1913, a year after Arizona's statehood and three years after the Arizona Constitution was drafted, a treatise on municipal law reported that cities engaged in governmental functions were not subject to liability for negligence:

---

[3] Although negligence suits certainly have their basis in common law, governments generally enjoyed sovereign immunity from suits sounding in tort, a tradition that carried over to this country. *See Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 389, 381 P.2d 107, 110 (1963) (quoting *State v. Sharp*, 21 Ariz. 424, 426, 189 P. 631, 632 (1920), for the proposition that "it is well settled by the great weight of authority that the state, in consequence of its sovereignty, is immune from prosecution in the courts and from liability to respond in damages for negligence, except in those cases where it has expressly waived immunity or assumed liability by constitutional or legislative enactment"); *see also* ¶¶ 10-13, *infra* (discussing common-law treatment of suits against municipalities engaged in governmental functions).

> *The rule is firmly established* in our law that where the municipal corporation is performing a duty imposed upon it as the agent of the state in the exercise of strictly governmental functions, there is no liability to private action on account of injuries resulting from the wrongful acts or negligence of its officers or agents thereunder, unless made liable by statute.  In other words, unless a right of action is given by statute, municipal corporations may not be held civilly liable to individuals for "neglect to perform or negligence in performing" duties which are governmental in their nature, and including generally all duties existent or imposed upon them by law solely for the public benefit.

6 Eugene McQuillin, MUNICIPAL CORPORATIONS § 2623 (1913) (footnote omitted).  Two years later, this court upheld municipal governmental immunity, finding that the City of Phoenix could not be held liable for the mere negligence of its employees.  *Morrell v. City of Phoenix*, 16 Ariz. 511, 517, 147 P. 732, 735 (1915).  In doing so, the court observed that it was "quite certain that it was the intention of the legislature of the territory of Arizona . . . that Phoenix should be immune from damages for injuries or loss occasioned by or through the malfeasance, misfeasance or neglect of duty of any of its officers or other authorities."  *Id.* at 512, 147 P. at 733.

¶11    In *Morrell*, a city employee sued the City of Phoenix for assigning to him a sprinkling cart pulled by a team of unruly horses, which bolted and dragged him through the city streets, resulting in the serious injuries.  *Id.*  The city defended that it was exempted from suit by a clause in its charter that immunized

the city from liability for simple negligence, while leaving the city liable for "willful neglect, . . . gross negligence or willful misconduct." *Id.* at 513, 147 P. at 733.

¶12    The plaintiff claimed there, as the Petitioners do here, that the immunity provision violated Article 18, Section 6 of the Arizona Constitution. *Id.* at 517, 147 P. at 735. This court found that the plaintiff's position was "not tenable, for the reason that said section only undertakes to preserve rights already cognizable by law, and does not undertake to create new rights of action." *Id.* This decision demonstrates that municipalities were immune from civil suits for ordinary negligence at common law.[4]

¶13    Ten years later, this court again spoke on the subject of municipal immunity in *Jones v. City of Phoenix*, 29 Ariz. 181, 239 P. 1030 (1925), *overruled in part by Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). In *Jones*, a city employee sued the City of Phoenix. *Id.* at 181-82, 239 P. at 1030-31. The court determined that the city's liability turned upon whether the function in which the city was engaged was "proprietary" or "governmental" because when a municipality was "acting in its governmental capacity, it had the exemptions of the

_____

    [4]    Phoenix's immunity was later repealed by removing the immunity provision from the city charter. *See City of Phoenix v. Williams*, 89 Ariz. 299, 303-04, 361 P.2d 651, 654-55 (1961). We cite *Morrell* here only for the proposition that sovereign immunity was the law in 1915.

-8-

sovereignty." *Id.* at 183, 239 P. at 1031. The court concluded that the rule was "of such almost universal acceptance . . . that we accept it as the undoubted law of Arizona." *Id.*

¶14    Almost forty years later, this court abolished the common-law rule of sovereign immunity. *See Stone*, 93 Ariz. at 387, 381 P.2d at 109. In doing so, however, we acknowledged that municipalities acting in a governmental capacity had historically been immune from negligence actions. *Id.* at 388-89, 381 P.2d at 109-10. Moreover, we invited the legislature to enact laws to protect the public and those it deemed "necessary to avoid a severe hampering of a governmental function or thwarting of established public policy." *Ryan v. State*, 134 Ariz. 308, 310-11, 656 P.2d 597, 599-600 (1982) (modified by statute as stated in *Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 174 Ariz. 336, 339, 849 P.2d 790, 793 (1993)). The legislature accepted the court's invitation and, among other acts, passed the recreational use statute.

¶15    Arizona is not the only state with a constitutional anti-abrogation provision to find that the provision protects only those rights of action in existence when it was adopted. *See, e.g.,* N.Y. Const. art. 1, § 16; Okla. Const. art. 23, § 7; Utah Const. art. 16, § 5; *see also Wilson v. Gipson*, 753 P.2d 1349, 1353-55 (Okla. 1988) (holding that a tort reform act limiting recovery for wrongful death did not violate the anti-abrogation provision

-9-

because the right to recover for wrongful death did not exist at common law); *Tiede v. State*, 915 P.2d 500, 504 (Utah 1996) (holding that "the scope of protection afforded by the [anti-abrogation] provision is limited to rights of action that existed at the time the provision was adopted").

¶16    This court has stated that if the provisions of another state's constitution are similar in nature and meaning to provisions in Arizona's Constitution, then the decisions of the judiciary in those states should be considered "very persuasive" in interpreting Arizona's similar provision. *Faires v. Frohmiller*, 49 Ariz. 366, 371-72, 67 P.2d 470, 472 (1937) (superseded by statute as stated in *Ward v. Stevens*, 86 Ariz. 222, 230, 344 P.2d 491, 496 (1959)). Arizona's anti-abrogation provision is based on a similar provision in the Oklahoma Constitution. *See Bryant v. Cont'l Conveyor & Equip. Co.*, 156 Ariz. 193, 199, 751 P.2d 509, 515 (1988) (Feldman, V.C.J., dissenting) (criticizing the majority for ignoring a case on point from Oklahoma "constru[ing] the parent constitutional clause" of our own anti-abrogation provision), *overruled by Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 344, 861 P.2d 625, 629 (1993). We therefore review Oklahoma's assessment of its anti-abrogation provision's application to municipal liability.

¶17    In *Wilson v. Gipson*, the Oklahoma Supreme Court upheld that state's Political Subdivision Tort Claims Act's protection of

a school district against a claim that the Act violated Oklahoma's anti-abrogation provision. 753 P.2d at 1355. The case arose when five school children and a teacher were killed in a boiler explosion at an elementary school. *Id.* at 1350. The Political Subdivision Tort Claims Act limited the parents' damages to approximately $18,000 per family. *Id.* The parents argued that the limitation violated the anti-abrogation provision of the Oklahoma Constitution which states, much as Arizona's provision does, that "[t]he right of action to recover damages for injuries resulting in death *shall never* be *abrogated*, and the amount recoverable shall not be subject to any statutory limitation." *Id.* at 1354 (citing Okla. Const. art. 23, § 7) (emphasis in original). The Oklahoma Supreme Court held that while the anti-abrogation provision was designed "to embody into the fundamental law, the constitution, the statutory right of action for wrongful death," it nonetheless did not apply to public entities because "as a part of the sovereignty of Oklahoma, [school districts] were entitled to sovereign immunity when Art. 23, § 7 was adopted." *Id.* (citations omitted). The court therefore concluded that the anti-abrogation provision did not protect a right to sue for damages that did not exist when the Oklahoma Constitution was adopted. *Id.* at 1355.

¶18    Similarly, Arizona's anti-abrogation provision was designed to protect rights of action in existence at the time it was adopted, but not necessarily those later created. *See Morrell*,

-11-

16 Ariz. at 517, 147 P. at 735. Accordingly, because a suit against a city for simple negligence could not have been maintained at the time the anti-abrogation provision was instituted, it is not protected by that provision, if the city was acting in its governmental capacity. We therefore turn to the latter question.

### 3. Was the Maintenance of Thorpe Park a Governmental Function?

¶19    At the time Arizona's Constitution was written, the common-law rule was that "there is no municipal liability for negligence in connection with public buildings or other property *used exclusively for public purposes* and from which no income is received." McQuillin, *supra* ¶ 10, § 2672.

¶20    The cases cited in McQuillin suggest that in determining whether the maintenance of a public park is a governmental function, courts should examine whether the government charges an admission fee or otherwise derives revenue from the use of the park and whether the park is held open to all. *See id.* § 2678 (citing, among other cases, *Russell v. City of Tacoma*, 35 P. 605, 606-07 (Wash. 1894)). In those cases in which maintenance of parks has been found to be a proprietary function, the government usually leased the park or otherwise generated revenue from its use, a typically proprietary action. *See Russell*, 35 P. at 606.

¶21    Although the case is more than 100 years old, the *Russell* court's analysis reflects the analysis courts applied in that era

and still apply to distinguish park operations that are governmental from those that are not. *See id.* at 606-07. When the city receives no revenue and the park is available to all citizens, the operation and maintenance has been held to be a governmental function, while limiting access to the park or generating revenue from it has led courts to conclude that the government was operating the park in a proprietary manner. *Id.; see also Board of Park Comm'rs of City of Louisville v. Prinz*, 105 S.W. 948 (Ky. Ct. App. 1907) (holding that a municipality was not liable for injury in a city park that was held open to the general public and from which the city received no revenue, but noting that the city might be liable if the city restricted access or gained revenue from use of the park); *Bisbing v. City of Asbury Park*, 78 A. 196 (N.J. Err. & App. 1910) (same); *cf. City of Denver v. Spencer*, 82 P. 590 (Colo. 1905) (holding city liable for an injury suffered on park bleachers when the city received revenue from licensing the sale of beverages at the park).

¶22    In this case, the City of Flagstaff did not charge an admission fee or otherwise derive revenue from the public's use of Thorpe Park. As did the City of Tacoma in the *Russell* case, Flagstaff obtained the land that is now Thorpe Park from the federal government on the stipulation that it be used as a public park. The Park is so used and is open to all who come there, not just to the residents of Flagstaff. Indeed, the Petitioners

-13-

themselves were residents of Prescott, not Flagstaff. These factors lead us to conclude that the operation and maintenance of Thorpe Park at the time William was injured were governmental in nature.

¶23    In sum, we conclude that the City holds Thorpe Park open to the public for recreational use. Its maintenance of the Park is a governmental function; as such, the Government's acts are shielded by the recreational use statute. Because the City's stewardship of the Park was governmental in nature, the City would have been immune at common law from tort liability for acts of ordinary negligence arising from its maintenance of the Park. Therefore, we hold that because Petitioners would have had no action when the anti-abrogation provision was adopted, the limited immunity afforded to the City of Flagstaff by the recreational use statute did not wrongfully abrogate Petitioners' right to sue the City for negligence.

## CONCLUSION

¶24    Based on the foregoing, we vacate the opinion of the court of appeals and reinstate the judgment of the trial court.

_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

-14-

---
Ruth V. McGregor, Vice Chief Justice

---
Michael D. Ryan, Justice

**F E L D M A N**, Justice (retired), dissenting

¶**25**     The court today concludes that because of the doctrine of sovereign immunity, the "right of action for simple negligence, against a municipality engaged in a governmental function [did not exist] at common law."  Opinion at ¶ 9; *see also* ¶ 17.  The court goes on to adopt a rule of municipal sovereign immunity for simple negligence when performing governmental functions. Thus, the court holds the recreational use statute, A.R.S. § 33-1551, does not violate the anti-abrogation clause contained in Article 18, Section 6 of the Arizona Constitution when applied to such municipalities. I dissent from these conclusions for several reasons.

¶**26**     First, I do not agree that the anti-abrogation clause is inapplicable to actions for negligence against governmental entities.  This issue was addressed in my dissent in *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 204-15 ¶¶ 30-79, 16 P.3d 757, 765-76 ¶¶ 30-79 (2001) (Feldman, J., dissenting).  The reasons given there need not be repeated here.

¶**27**     Next, the majority holds that the protection of Article

-15-

18, Section 6 does not apply because at common law there was no right of action in Arizona "for simple negligence[] against a municipality engaged in a governmental function." Opinion at ¶ 9, relying primarily on *Morrell v. City of Phoenix*, 16 Ariz. 511, 147 P. 732 (1915). But *Morrell* does not support that conclusion. The doctrine of sovereign immunity is not mentioned in *Morrell*; the basis for the holding that Morrell had no cause of action against the City of Phoenix was that prior to adoption of our constitution and its anti-abrogation clause, the Phoenix city charter contained an immunity provision that had been approved by the legislature in the 1881 grant of the charter. Thus, no right of action against the City of Phoenix existed at common law prior to or at the time our constitution went into effect. *Id*. at 512-13, 147 P. at 733. Thus, I disagree with the majority's conclusion that *Morrell* "demonstrates that municipalities were immune from civil suits for ordinary negligence at common law." Opinion at ¶ 12.[5] *Morrell* demonstrates only that the City of Phoenix was immune by charter provision, so that no action could have been maintained against it when Article 18, Section 6 was adopted. Article 18 protects only those "rights already cognizable by law" at the time our constitution was adopted. *Morrell*, 16 Ariz. at 517, 147 P. at 735.

¶28        No case in Arizona has ever explicitly addressed the

---

[5]    Indeed, the Phoenix ordinance was later repealed. *See* opinion at ¶ 12 n.3.

question of whether the anti-abrogation clause was applicable to actions against a municipality. It is notable that in *Clouse* the majority did not adopt the state's argument that actions against governmental entities were outside the protection of Article 18, Section 6 but instead based the state's immunity on the specific provisions of the claims clause of Article 4 of the constitution. The court held that Article 4 provided independent and particularized grounds for the conclusion that the legislative branch might reinstate sovereign immunity as to claims against the *state* should it desire to do so. *Clouse*, 199 Ariz. at 207 ¶ 24, 16 P.3d at 768 ¶ 24. But Article 4 is inapplicable to municipalities because it provides only that the legislature may regulate suits against the state. Ariz. Const. art. IV, pt. 2, § 18. The suit that is the subject of the present case is not against the state but against the City of Flagstaff. Municipalities have always been considered entities separate from the state.

¶29     Finally, I disagree with the court's decision that running an admission-free park is a governmental function. Opinion at ¶¶ 22-23. Arizona's law on the question of governmental/proprietary functions is, to put it tactfully, a morass. *See Clouse*, 199 Ariz. at 213-14 ¶¶ 74-77, 16 P.3d at 774-75 ¶¶ 74-77 (Feldman, J., dissenting). There was, in fact, "utmost confusion" about what was governmental and what was proprietary. *Jones v. City of Phoenix*, 29 Ariz. 181, 183, 239 P. 1030, 1031

-17-

(1925).  Today's opinion will do little to cure that problem.

_____
STANLEY G. FELDMAN, Justice (retired)