IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

ROBERTO TORRES, et al., *Plaintiffs/Appellees*,

*v.*

JAI DINING SERVICES (PHOENIX), INC., *Defendant/Appellant*.

No. 1 CA-CV 19-0544
FILED 3-29-2022

Appeal from the Superior Court in Maricopa County
No. CV2016-016688
The Honorable Sherry K. Stephens, Judge (Retired)

**REVERSED AND REMANDED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Appellate Counsel for Plaintiffs/Appellees*

Clarke Law Offices, Phoenix
By Robert F. Clarke
*Counsel for Plaintiffs/Appellees Torres*

Koglmeier Law Group, PLC, Mesa
By Matthew D. Koglmeier
*Counsel for Plaintiffs/Appellees Rosas and Suarez*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Joshua D. Rothenberg Bendor, Hayleigh S. Crawford
*Co-Counsel for Defendant/Appellant*

Quintairos, Prieto, Wood & Boyer, P.A., Scottsdale
By Dominique T. Barrett
*Co-Counsel for Defendant/Appellant*

O'Steen & Harrison, PLC, Phoenix
By C. Lincoln Combs
*Counsel for Amicus Curiae Arizona Association for Justice*

Schelstraete Law Office, Tempe
By Peter H. Schelstraete
*Counsel for Amicus Curiae Arizona Licensed Beverage Association*

Bowman and Brooke, LLP, Phoenix
By Amanda E. Heitz
*Counsel for Amicus Curiae Arizona Association of Defense Counsel*

Gammage & Burnham, P.L.C., Phoenix
By Camila Alarcon, Christopher L. Hering
*Counsel for Amicus Curiae*
*Arizona Restaurant and Hospitality Association*

---

**OPINION**

Presiding Judge Lawrence F. Winthrop[1] delivered the opinion of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

[1]     Judge Lawrence F. Winthrop was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2021. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Winthrop as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

**W I N T H R O P**, Judge:

¶1 In this case, we address a liquor licensee's liability for damages its patron, Cesar Aguilera Villanueva, caused after a night of drinking and irresponsible decisions that resulted in the deaths of two persons. Specifically, we address whether Plaintiffs'[2] common law negligence and dram shop liability claims against the licensee, Defendant/Appellant JAI Dining Services (Phoenix), Inc. ("JAI"), were preempted by Arizona's statutory scheme for determining dram shop liability. *See* A.R.S. §§ 4-311, -312. The question comes to us on remand from the Arizona Supreme Court, which has directed us to consider issues previously raised by JAI on appeal. *See Torres v. JAI Dining Servs. (Phoenix) Inc.* ("*Torres II*"), 252 Ariz. 28, 32-33, ¶¶ 19-20 (2021), *vacating and remanding Torres v. JAI Dining Servs. (Phoenix) Inc.* ("*Torres I*"), 250 Ariz. 147 (App. 2020).

¶2 We answer the question posed in the affirmative, concluding that under Arizona's statutory framework for determining dram shop liability, A.R.S. § 4-312(B) expressly preempts Plaintiffs' claims. We further conclude that, contrary to this court's opinion in *Young v. DFW Corp.*, 184 Ariz. 187 (App. 1995) (review denied Dec. 21, 1995), § 4-312(B) does not run afoul of the Arizona Constitution's anti-abrogation clause, *see* Ariz. Const. art. 18, § 6, a conclusion compelled by our supreme court's opinion in *Dickey ex rel. Dickey v. City of Flagstaff*, 205 Ariz. 1 (2003), because dram shop liability claims did not exist at common law in 1912. Accordingly, we reverse that portion of the superior court's judgment against JAI and remand for that court to enter judgment in favor of JAI and in favor of Plaintiffs only as to Villanueva.

## FACTS AND PROCEDURAL HISTORY[3]

¶3 Plaintiffs sued Villanueva for negligence and JAI under common law theories of negligence and dram shop liability, and pursuant to statutory dram shop negligence under A.R.S. § 4-311. Before trial, JAI unsuccessfully moved for summary judgment regarding proximate

---

[2] We refer to Plaintiffs/Appellees Roberto Torres, Orlenda Guillen, Hernan Gastelum Rosas, and Maria Suarez collectively as "Plaintiffs."

[3] As it is unnecessary to our analysis, we do not recount all the underlying facts in this opinion. A more complete recitation of the facts may be found in the previous related opinions. *See Torres I*, 250 Ariz. at 149-51, ¶¶ 3-16; *Torres II*, 252 Ariz. at 29-30, ¶¶ 2-8.

causation, arguing that Villanueva's decision to drive again some hours after safely arriving home was, as a matter of law, an intervening and superseding cause of the victims' deaths, thereby relieving JAI of liability. JAI did not, however, argue either before or at trial that Plaintiffs' common law negligence and dram shop liability claims against JAI were preempted by Arizona's statutory scheme for determining dram shop liability.

¶4        At the close of Plaintiffs' case during the ensuing jury trial, JAI moved for judgment as a matter of law under Rule 50(a), Ariz. R. Civ. P., on the claims of negligence and dram shop liability, arguing both the duty and proximate cause elements of negligence could not be met. The superior court denied the motion.

¶5        The jury found in Plaintiffs' favor on negligence against Villanueva but rendered an unusual split verdict as to JAI, finding in Plaintiffs' favor on the common law negligence and dram shop claims,[4] but in JAI's favor on the legislatively created dram shop claim. The jury awarded Plaintiffs $2,000,000 in compensatory damages, with fault apportioned sixty percent to Villanueva and forty percent to JAI. The superior court subsequently denied JAI's renewed motion for judgment as a matter of law, *see* Ariz. R. Civ. P. 50(b), again based only on the scope of duty owed and lack of proximate cause.

¶6        JAI appealed the judgment and denial of its renewed motion for judgment as a matter of law, arguing that for three independent reasons it should not be held liable: (1) the claims on which the jury found JAI liable had been preempted by A.R.S. § 4-312(B) (preemption); (2) Villanueva's decision to drive again after arriving home, getting into bed, and going to sleep was an intervening, superseding cause that cut off JAI's liability (proximate cause); and (3) JAI did not breach any duty the law imposed on it and could have done nothing to prevent Villanueva from leaving his house and operating a motor vehicle several hours after he left JAI's club (duty). Plaintiffs argued that JAI waived the preemption issue by raising it for the first time on appeal, but nevertheless addressed the issue on the merits.

¶7        We reversed the judgment against JAI, holding the superior court erred by not directing a verdict in JAI's favor because Villanueva's

---

[4]       Although the verdict forms identified three counts (negligence, dram shop liability, and negligence per se), the dram shop liability verdict form was based on an additional instruction regarding JAI's liability for common law negligence rather than a separate claim.

independent decision to leave his home and drive was an intervening and superseding cause that broke the chain of proximate causation. *Torres I*, 250 Ariz. at 149, 155, ¶¶ 2, 33-34; *see also Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, 440, ¶ 19 (App. 2007) (review denied Sept. 25, 2007) ("[W]e hold that [the patron's] decision to return that night to retrieve her vehicle while she was still intoxicated was unforeseeable and extraordinary and thus constituted a superseding, intervening event of independent origin that negated any negligence on the part of the tavern or its employees."). Because we reversed on proximate causation, we did not reach the preemption or duty issues. *Torres I*, 250 Ariz. at 155, ¶ 34 n.10.

**¶8** The Arizona Supreme Court granted Plaintiffs' petition for review on one issue: whether Villanueva's decision to drive again after arriving home and going to bed was an intervening and superseding cause that cut off JAI's liability. JAI nevertheless raised the issue of preemption in its opposition to the petition, and again in its post-grant supplemental brief.

**¶9** In November 2021, the supreme court vacated our opinion, holding that whether Villanueva's decision to resume driving was an intervening and superseding cause of the victims' deaths was a question appropriately reserved for the jury. *Torres II*, 252 Ariz. at 32, ¶ 18. The court further noted that JAI and amicus had asked it to decide whether Plaintiffs' common law negligence and dram shop claims had been preempted by A.R.S. § 4-312(B), but it declined to do so, explaining:

> We did not grant review of this issue, and therefore Plaintiffs did not address preemption in their simultaneously filed supplemental brief. Similarly, other parties interested in this significant issue have not been notified of the opportunity to submit amicus briefs. Also, JAI did not raise this issue to the trial court, although it did argue it before the court of appeals. That court should decide in the first instance whether an exception to the waiver doctrine is warranted and, if so, what the proper disposition on the merits should be.

*Id.* at ¶ 19. Our supreme court then remanded the case to this court "to consider other issues raised by JAI on appeal." *Id.* at 32-33, ¶ 20.

**¶10** On remand, we ordered additional briefing by the parties, and invited other interested parties to file amicus briefs, setting forth their respective positions on other issues raised by JAI on appeal but not previously addressed, namely: (1) whether an exception to the waiver

doctrine is warranted in this case, and, if so, (2) whether Plaintiffs' common law negligence and dram shop claims have been preempted by § 4-312(B).

**ANALYSIS**

*I.    Waiver*

**¶11**        We must first address Plaintiffs' contention that JAI has waived the issue of preemption by not raising it in the superior court.  If we find that waiver applies, our analysis ends.

**¶12**        Appellate courts generally will not consider issues raised for the first time on appeal.  *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 482 (1986) (citing *Town of S. Tucson v. Bd. of Supervisors of Pima Cnty.*, 52 Ariz. 575, 582 (1938); *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977); *Milam v. Milam*, 101 Ariz. 323, 325 (1966)); *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal." (citing *Van Dever v. Sears, Roebuck & Co.*, 129 Ariz. 150, 151-52 (App. 1981); *United States v. Globe Corp.*, 113 Ariz. 44, 51 (1976))).  This general waiver rule "serves objectives of fair notice, and promotes both the ability to meet issues and judicial efficiency," *Dombey*, 150 Ariz. at 482, and is intended to prevent unfair surprise, *Stokes v. Stokes*, 143 Ariz. 590, 592 (App. 1984).

**¶13**        The rule is procedural, not substantive, however, and may be suspended at an appellate court's discretion.  *Dombey*, 150 Ariz. at 482 (citing *Town of S. Tucson*, 52 Ariz. at 582).  We may exercise this discretion when an issue is of statewide importance, of constitutional dimension, or when the public interest is better served by having the issue considered rather than deferred.  *Id.* (citing *Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104 (1984); *Ruth v. Indus. Comm'n*, 107 Ariz. 572, 573-74 (1971)).  *See also Town of S. Tucson*, 52 Ariz. at 583 (recognizing that an exception to the general waiver rule includes "questions of a general public nature, affecting the interests of the state at large," and particularly "when the question raised for the first time is one of substantive law which is not affected by any dispute as to the facts of the case").

**¶14**        To prevent unfair surprise, the court should afford the parties a full opportunity to brief and argue the issue, and when appropriate, allow participation by amicus curiae as well. *Jimenez v. Sears, Roebuck & Co.*, 183 Ariz. 399, 406 n.9 (1995); *see also Liristis v. Am. Fam. Mut. Ins. Co.*, 204 Ariz. 140, 143, ¶ 11 (App. 2002) ("It is also significant that both parties have

briefed and argued the issue extensively and there is no claim of surprise." (citing *Stokes*, 143 Ariz. at 592)).

¶15 Here, requiring JAI to have raised preemption in the superior court makes little sense because doing so would have proved futile. The superior court had to follow this court's prior ruling in *Young*. *See Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013) ("Trial courts are required to follow the decisions of a higher court . . . ."). Moreover, the fundamental rationale for applying the waiver doctrine does not apply because there is no unfair surprise, as both parties have had ample notice and multiple opportunities to brief and argue the preemption issue, and the court has received briefing from amici representing both civil plaintiffs' and defense bars. *See Jimenez*, 183 Ariz. at 406; *City of Tucson v. Tanno*, 245 Ariz. 488, 494, ¶ 23 (App. 2018) (considering an issue first raised on appeal when the opposing party was "afforded the opportunity to, and did in fact, respond to [the waived issue] in its answering brief"); *Evenstad v. State*, 178 Ariz. 578, 582 n.2 (App. 1993) (addressing a new issue after affording both sides an opportunity to file supplemental briefs on the issue).

¶16 Furthermore, well-settled exceptions to the waiver doctrine apply, as the preemption issue raised by JAI turns on whether this court correctly determined in *Young* that A.R.S. § 4-312(B) runs afoul of the Arizona Constitution's anti-abrogation clause, *see* Ariz. Const. art. 18, § 6, and therefore cannot preempt common law negligence and dram shop liability claims. The question whether § 4-312(B) constitutionally preempts common law liability is an outcome-determinative question of law that is an important state-wide issue to both civil plaintiffs' counsel and the civil defense bar, whose clients' interests will likely be materially affected by the outcome. *See Barrio*, 143 Ariz. at 104 ("We believe that the constitutional [anti-abrogation] issue in the case at bench is sufficiently important that it should be considered even though not raised in the trial court."); *Evenstad*, 178 Ariz. at 582 ("If application of a legal principle, even if not raised below, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue." (citing *Rubens v. Costello*, 75 Ariz. 5, 9 (1952))). Also, because of the unusual split-jury verdict that occurred — in which the jury found that JAI violated a common law obligation but not a statutory obligation imposed on liquor licensees — this case presents an appropriate vehicle for addressing the issue. Doing so requires a case with this type of mixed verdict, which is also appealed, something that might not occur again for years. *See Dombey*, 150 Ariz. at 482 ("[T]he public interest is better served by having the issue considered rather than deferred."). Accordingly, we exercise our discretion to address JAI's preemption argument.

*II.*     *Preemption*

**¶17**     JAI argues that, in light of recent supreme court case law, including *Dickey*, *Young* and cases relying on *Young*'s holding are no longer good law.   Accordingly, JAI maintains that A.R.S. § 4-312(B) validly preempts Plaintiffs' common law claims and the judgment against JAI must be reversed.   Determining whether JAI's argument is correct requires us to examine the history of dram shop liability in Arizona and cases affecting that law.

*1.*     *Dram Shop Liability in Arizona*

**¶18**     "At common law, . . . a tavern owner [wa]s not liable for injuries sustained off-premises by third persons as the result of the acts of an intoxicated patron, even though the tavern owner's negligence in serving that patron was a contributing cause of the accident." *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983) (citing *Cruse v. Aden*, 20 N.E. 73, 74 (Ill. 1889); *Waller's Adm'r v. Collingsworth*, 137 S.W. 766, 767 (Ky. 1911); 45 Am. Jur. 2d, *Intoxicating Liquors* § 553 (1969)).   Similarly, "the rule of nonliability for tavern owners [was] the common law in Arizona" from this state's inception.   *Id.* (citing numerous Arizona cases dating from 1940 forward that approved, adopted, and applied the common law rule of nonliability).

**¶19**     That rule of nonliability changed in July 1983, however, when the Arizona Supreme Court decided both *Ontiveros* and a companion case, *Brannigan v. Raybuck*, 136 Ariz. 513 (1983), in which the court abolished the common law doctrine of tavern owner nonliability in Arizona and for the first time recognized a common law cause of action for dram shop liability. *See Ontiveros*, 136 Ariz. at 513; *Brannigan*, 136 Ariz. at 515.[5]   Also, in each case, the court invited the legislature to enact statutes addressing (and arguably supplanting or preempting) the change in the common law if it so desired.   *See Ontiveros*, 136 Ariz. at 513 ("We do not find [exemptions from

---

[5]     In each case, the court premised tavern owner duty and liability on statutory authority as well.   *See Ontiveros*, 136 Ariz. at 509-11 (relying on A.R.S. § 4-244(14), which makes it unlawful for a licensee to furnish alcohol to an intoxicated person, and "recogniz[ing] the duty described in that statute as a duty imposed by statute and adopted by the common law" (citations omitted)); *Brannigan*, 136 Ariz. at 516-17 (relying on A.R.S. § 4-244(9), which prohibits furnishing "spirituous liquor" to those under the legal drinking age, and A.R.S. § 4-241(A), which requires a licensee to demand certain types of identification from those requesting service, as providing "a duty recognized both by common law and statute").

ordinary tort liability] applicable to the liquor industry. If we are mistaken in this, it is possibly within the legislative power to confer upon the liquor industry some special benefit exempting it from liability."); *Brannigan*, 136 Ariz. at 519 ("This is . . . merely the response of the common law to changed social conditions. If the legislature considers it to be unwise, it has the means of so informing us.").

**¶20** Three years after our supreme court decided *Ontiveros* and *Brannigan*, the legislature accepted our supreme court's invitation when it enacted A.R.S. §§ 4-311 and 4-312. Section 4-311 codified a dram shop cause of action against sellers of liquor to the public, but it did not mirror the common law claims from *Ontiveros* and *Brannigan*. *See* 1986 Ariz. Sess. Laws, ch. 329, § 1 (2nd Reg. Sess.). Instead under § 4-311(A), a liquor licensee is liable for property damages, personal injury, or wrongful death if (1) the licensee sells alcohol to a person who is "obviously intoxicated" or under the legal drinking age, (2) the purchaser consumes the alcohol sold by the licensee, and (3) the consumption of the alcohol is a proximate cause of the property damage, injury, or death. Section 4-311(D) further defines "obviously intoxicated" as "inebriated to such an extent that a person's physical faculties are substantially impaired and the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction that would have been obvious to a reasonable person."

**¶21** At the same time, the legislature went a step further under § 4-312(B). Subsection B addressed when a liquor licensee would not be liable, saying a liquor licensee is "not liable" for property damage, personal injury, or death allegedly caused by selling, furnishing, or serving liquor, "except as provided in § 4-311." The full text of A.R.S. § 4-312(B) is as follows:

> Subject to the provisions of subsection A of this section and except as provided in § 4-311, a person, firm, corporation or licensee is not liable in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor.

**¶22** Since the legislature's enactment of A.R.S. §§ 4-311 and 4-312, liquor licensees, including JAI here, have contended the plain language of these statutes makes explicit the legislature passed the statutes to preempt the common law liability created by *Ontiveros* and *Brannigan* and replace it with a defined statutory liability scheme "based on objective, observable,

and workable standards." Opinions written by both our supreme court and this court after the passage of §§ 4-311 and 4-312, however, cast doubt on this contention because the opinions raised the question whether the anti-abrogation clause protects causes of action—including the common law cause of action for dram shop liability recognized in *Ontiveros* and *Brannigan*—that came into being after the adoption of our constitution. *See Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 345-46 (App. 1992).

¶23 In *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 17-18 (1986), our supreme court held that the anti-abrogation clause "extends to wrongs recognized at common law, but it is not limited to those elements and concepts of particular actions which were defined in our pre-statehood case law." Two years later, however, in *Bryant v. Continental Conveyor & Equipment Co.*, 156 Ariz. 193, 195 (1988), a split supreme court held that A.R.S. § 12-551, which limits product liability for manufacturers and sellers, "is not an abrogation of a substantive right of action protected by art. 18, § 6 because the tort of strict products liability did not exist at the time the constitutional provision was adopted." Five years later, the supreme court overruled *Bryant* and found § 12-551 unconstitutional, reasoning that "[t]he right to recover for injuries caused by products was, of course, recognized at common law; therefore, the development of strict liability causes of action to vindicate that right is . . . covered by art. 18, § 6." *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 344 (1993) (citing *Boswell*, 152 Ariz. at 17-18). Justice Martone's vigorous dissent argued that "*Bryant* was correct when it concluded that art. 18, § 6 does not apply to this court's post-constitution development of the law of torts," and that the majority in *Hazine* had apparently "constitutionalized" all of tort law in Arizona, in contravention of our supreme court's prior case law, including *Industrial Commission v. Frohmiller*, 60 Ariz. 464, 468 (1943). *Hazine*, 176 Ariz. at 347 (Martone, J., dissenting).

¶24 In 1995, this court decided *Young*, which addressed the constitutionality of A.R.S. § 4-312(B) under the Arizona Constitution's anti-abrogation clause. In *Young*, a plaintiff sued a bar owner for injuries caused after an intoxicated patron left the bar and drove head-on into the plaintiff's vehicle. 184 Ariz. at 187. The defendant bar relied on § 4-312(B) when—before trial—it asked the superior court to limit the plaintiff to proving dram shop liability through § 4-311. *Id.* at 188. The court agreed that, based on the limiting language of § 4-312(B), § 4-311 provided the exclusive remedy for dram shop liability in Arizona. *Id.* The court, therefore, refused the plaintiff's requested general negligence instruction and instructed the jury only under § 4-311. *Id.* After a defense verdict, the plaintiff appealed, challenging the constitutionality of § 4-312(B) and arguing that the statue

violated the Arizona Constitution's anti-abrogation clause because it abrogated the general negligence cause of action enunciated as common law in *Ontiveros*. *See id.* at 187.

¶25 A panel of this court agreed, concluding that the statutory scheme unconstitutionally abrogated the common law action for those plaintiffs who could not establish that the purchaser was "obviously intoxicated," as defined by § 4-311, but who could show, based on common law negligence, that the licensee knew or should have known the purchaser was intoxicated. *Id.* at 189. Accordingly, the court found A.R.S. § 4-312(B) unconstitutional for violating the Arizona Constitution's anti-abrogation clause. *Id.* at 190. Given the previous *Boswell*/*Bryant*/*Hazine* line of cases, the panel did not analyze whether the right to recover against dram shops for negligence existed at common law; instead, the court simply assumed that the clause applied. *See id.* at 188-90. Our supreme court denied review.[6]

¶26 More recently, however, our supreme court has clarified the scope of the anti-abrogation clause, explaining that it does not constitutionalize the right to recover in tort for any injury cognizable at common law. *See, e.g.*, *Cronin v. Sheldon*, 195 Ariz. 531 (1999). In *Cronin*, petitioners who had brought claims for wrongful termination in violation of public policy argued their claims were protected by the Arizona Constitution's anti-abrogation clause. *Id.* at 538, ¶ 33. Our supreme court disagreed, explaining that although "article 18, § 6 prevents abrogation of all common law actions for negligence, intentional torts, strict liability, defamation, and other actions in tort which trace origins to the common law," it does not "extend constitutional protection to all tort causes of action, whenever or however they may have arisen." *Id.* at 538-39, ¶¶ 35-36. Instead, "the anti-abrogation clause applies only to tort causes of action that either existed at common law or evolved from" a recognized common law right to recover for the injury. *Id.* at 539, ¶ 39.

---

[6] Later, in *Andrews ex rel. Woodard v. Eddie's Place, Inc.*, 199 Ariz. 240 (App. 2000), the appellate court, relying largely on the fact that it had previously declared A.R.S. § 4-312(B) unconstitutional, stated that it found "nothing" in A.R.S. § 4-311's "language clearly indicating that the legislature intended, by its enactment of § 4-311, to annul or abrogate *Ontiveros*'s holding." *Id.* at 242, ¶ 6 & n.1. The court concluded that, in its opinion, "the legislature did not create a new liability for liquor licensees but simply attempted to codify the common law established by *Ontiveros*." *Id.*

¶27          In applying the new test, the *Cronin* court held that the legislature could abrogate a claim for employment discrimination because "[s]uch a claim neither existed in 1912 when statehood was achieved, nor did it evolve from common law antecedents." *Id.* at ¶ 37. Although the petitioners argued that because claims for "wrongful termination" had been recognized at English common law as early as 1562, the common law adopted by Arizona at the time of statehood must include this cause of action, the court disagreed, saying the petitioners' reasoning was "flawed" because "it assumes the English cause of action was the pre-statehood genesis of the present tort action for wrongful discharge." *Id.* at ¶ 38. In its analysis, the court distinguished *Hazine* by explaining that "because a right of action for injuries caused by defective products was recognized at common law," the legislature could not abrogate the right to recover for defective products. *Id.* at ¶ 36.

¶28          Next, in 2003, our supreme court decided *Dickey*, in which it extended *Cronin*'s reasoning to a common law negligence action against a municipality and further clarified that the Arizona Constitution's "anti-abrogation provision was designed to protect rights of action in existence at the time it was adopted, but not necessarily those later created." 205 Ariz. at 5, ¶ 18 (addressing Arizona's recreational use statute in A.R.S. § 33-1551 and citing *Morrell v. City of Phoenix*, 16 Ariz. 511, 517 (1915), *superseded by statute as stated in City of Phoenix v. Williams*, 89 Ariz. 299, 303 (1961)).

¶29          In *Dickey*, the plaintiffs sued the City of Flagstaff for injuries a child incurred while sledding in a City park. *Id.* at 2, ¶¶ 2-4. Relying on the language of A.R.S. § 33–1551, the City defended on the ground that, because the park was held open for recreational use, the plaintiffs could not prevail unless they showed that City employees had been grossly negligent or had wilfully or maliciously caused injury to the child. *Id.* at ¶ 4. The superior court granted summary judgment for the City, finding the plaintiffs failed to present evidence the City's actions had been wilful, malicious, or grossly negligent. *Id.* The court further determined that the recreational use statute did not abrogate the plaintiffs' negligence cause of action and therefore did not violate the Arizona Constitution's anti-abrogation clause. *Id.*

¶30          Our supreme court granted review to decide whether the recreational use statute's requirement that a plaintiff show gross negligence or wilful or malicious conduct was unconstitutional because it abrogated the right to bring a lawsuit sounding in simple negligence against the City. *Id.* at 2-3, ¶¶ 5, 8. The *Dickey* court applied *Cronin*'s clarified standard and reasoned that, "to fall within the protection of the anti-abrogation provision

of the Arizona Constitution, [the] right of action for simple negligence against the City must have existed at common law or have found its basis in the common law at the time the constitution was adopted," and because the plaintiffs had "failed to establish that a right of action for simple negligence, against a municipality engaged in a governmental function, existed at common law," their argument failed. *Id.* at 3, ¶ 9 (citing *Cronin*, 195 Ariz. at 539, ¶ 39). Under this standard, a general negligence claim against a municipality is not protected by the Arizona Constitution's anti-abrogation clause "because a suit against a city for simple negligence could not have been maintained at the time the anti-abrogation provision was instituted." *Id.* at 5, ¶ 18.

### 2. *Cronin* and *Dickey*'s Effect

¶31  Read together, *Cronin* and *Dickey* confirm that if a plaintiff could not have asserted a claim for a particular type of harm against a particular defendant in 1912, then the anti-abrogation clause provides that claim no protection. The history of dramshop negligence actions in Arizona follows much the same pattern as municipal negligence actions in *Dickey*, in that both types of actions were (1) rejected at common law, then (2) judicially recognized by abolishing the common law rule, and then (3) legislatively addressed. Under *Cronin* and *Dickey*, therefore, the anti-abrogation clause does not prohibit the legislature from delineating the scope of liability for the common law dram shop claim first created in 1983 by *Ontiveros* and *Brannigan*.

¶32  *Cronin* and *Dickey* further confirm that the anti-abrogation clause does not protect types of liability that had already been considered and rejected by 1912. In *Cronin*, our supreme court specifically "emphasize[d]" that pre-statehood, American courts had specifically considered and rejected the type of wrongful termination liability at issue. 195 Ariz. at 539, ¶ 38. Likewise, in *Dickey*, our supreme court said American courts had considered and rejected municipal liability for negligence. 205 Ariz. at 3, ¶ 10. Similarly, Arizona courts had uniformly rejected lawsuits for dram shop liability by 1912. *See Collier v. Stamatis*, 63 Ariz. 285, 290 (1945) (stating that "it has been held by all the courts and by every commentator" that dramshops are not liable), *overruled on other grounds by Ontiveros*, 136 Ariz. at 505-06; *Ontiveros*, 136 Ariz. at 504 (citing pre-1912 cases). Because this type of claim against this type of defendant had already been considered and rejected at common law, § 4-312(B) fits within *Cronin*'s and *Dickey*'s holdings rather than *Hazine*'s concept of the "evolution" of common law causes of action. *See* 176 Ariz. at 344. Under *Dickey*, this type of claim "could not have been maintained at the time the anti-abrogation

provision was instituted, [and therefore] is not protected by that provision." 205 Ariz. at 5, ¶ 18.

¶33 Also, the fact that the common law recognized general negligence actions does not bring dram shop liability claims within the anti-abrogation clause's scope. *Dickey* itself involved "a lawsuit sounding in simple negligence." *Id.* at 3, ¶ 8. But even though "negligence suits certainly have their basis in common law," that does not protect rights of recovery unavailable at common law. *Id.* at ¶ 9 n.3; *see also Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 407, ¶ 41 (App. 2014) ("We therefore hold that, like the wrongful termination claim in *Cronin*, the Lerners' claim for negligent failure to disclose is not protected by the anti-abrogation clause."); *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 506-07, ¶ 18 (App. 1999) ("It is not enough, as Goodman attempts here, to append to the asserted claim a name derived from the catalogue of common law actions. Rather, the context out of which the claim arises must be examined to determine whether it supports a conclusion that it implicates a right of action recognized by the common law."). If, for a particular kind of wrong and against a particular type of defendant, "negligence could not have been maintained at the time the anti-abrogation provision was instituted, it is not protected by that provision." *Dickey*, 205 Ariz. at 5, ¶ 18; *see also Cronin*, 195 Ariz. at 539, ¶ 36 ("What we did *not* do in *Hazine*, however, is extend constitutional protection to all tort causes of action, whenever or however they may have arisen.").

¶34 Finally, the principles set forth in *Cronin* and *Dickey* serve to preserve and respect the separation of powers between the courts and the legislature. As JAI recognizes, the legislature could have passed the statutory scheme for dram shop liability any time between 1912 and 1983 without implicating the anti-abrogation clause, and "[i]t cannot be the case that legislation that would have been constitutional if enacted in 1982 is unconstitutional if enacted in 1986, merely because the Supreme Court created brand new liability in 1983."

¶35 Social host immunity follows a similar track. In 1985, the legislature immunized social hosts from liability for serving alcohol. *See* A.R.S. § 4-301. Because social hosts "were not liable at common law[,] A.R.S. § 4-301 is constitutional" under the anti-abrogation clause. *Bruce v. Chas Roberts Air Conditioning, Inc.*, 166 Ariz. 221, 225 (App. 1990). It cannot be the case that social host immunity would have been unconstitutional if a court had created social host liability in 1984.

¶36　　　　In other words, as both *Ontiveros* and *Brannigan* recognized, although the judiciary remains free to change the common law, the legislature retains the constitutional power to recraft the parameters or scope of a court-pronounced common law cause of action. *See Ontiveros*, 136 Ariz. at 513; *Brannigan*, 136 Ariz. at 519; *see also* Ariz. Const. art. 4, pt. 1, § 1(1) (providing that "[t]he legislative authority of the state shall be vested in the legislature").

*3.　　　Consideration of the Preemption Question on Remand*

¶37　　　　Plaintiffs' main argument against preemption is that, under *Young*, A.R.S. § 4-312(B) unconstitutionally abrogates the common law dram shop cause of action. Even if *Young* was correct in determining § 4-312(B) abrogates that cause of action,[7] the common law cause of action *Ontiveros* and *Brannigan* recognized in 1983 did not exist in 1912, and *Cronin* and *Dickey* make clear that, if such a cause of action could not have been maintained at the time the anti-abrogation clause was instituted, the claim is not protected by that clause. Accordingly, *Young*'s unstated assumption that the anti-abrogation clause applies to § 4-312(B) was error, and *Young* cannot be good law after *Dickey*. Consequently, § 4-312(B) cannot run afoul of the anti-abrogation clause and therefore remains good law.

---

[7]　　*Young* concluded that, in enacting § 4-312(B) in conjunction with § 4-311, the legislature did not merely regulate the general negligence cause of action recognized in *Ontiveros*, but unconstitutionally abrogated it. 184 Ariz. at 189-90. *Young*'s conclusion appears to be an overstatement of what the legislature did in 1986 because it did not eliminate an existing civil cause of action, but instead modified the proof elements necessary to prevail on liability, and in our opinion, acted to permissibly regulate the cause of action. *See Barrio*, 143 Ariz. at 106 (acknowledging the line between permissible regulation and abrogation is when the right of action is "completely abolished" (quoting *Ruth v. Indus. Comm'n*, 107 Ariz. 572, 575 (1971))). Under *Barrio*, "[t]he legislature may regulate the cause of action for negligence so long as it leaves a claimant reasonable alternatives or choices which will enable him or her to bring the action. It may not, under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action." *Id.* Thus, the legislature in 1986 simply corrected what it saw as an unclear common law pronouncement that when read expansively had the potential to unfairly harm the business community, and instead applied a standard requiring licensees to avoid selling alcohol to "obviously intoxicated" patrons.

¶38 Further, the plain language of § 4-312(B), when read in conjunction with § 4-311, makes clear the legislature expressly preempted the common law liability created by *Ontiveros* and *Brannigan* and replaced it with a more clearly defined statutory liability scheme. Thus, Plaintiffs' common law negligence and dram shop liability claim against JAI is preempted, and §§ 4-311 and 4-312 define the scope of liability for ordinary commercial sales of alcohol by licensees.[8]

**CONCLUSION**

¶39 Contrary to this court's assumption in *Young*, A.R.S. § 4-312(B) does not run afoul of the Arizona Constitution's anti-abrogation clause because dram shop liability claims did not exist at common law in 1912. Further, A.R.S. § 4-312(B) expressly preempts Plaintiffs' claim for common law negligence and dram shop liability, the only claim on which Plaintiffs prevailed. Accordingly, we reverse that portion of the superior court's judgment against JAI and remand for that court to enter judgment in favor of JAI and in favor of Plaintiffs only as to Villanueva.



AMY M. WOOD • Clerk of the Court
FILED:      JT

---

[8] Because our opinion renders moot JAI's "duty" argument, we do not address it.